**UNITED STATES of America,
Appellant,**

**v.**

**Raymond Isaac ANDREWS, Defendant,
Appellee.**

**No. 72–1103.**

United States Court of Appeals,
First Circuit.

Heard May 2, 1972.

Decided May 19, 1972.

---

Joseph L. Tauro, U. S. Atty., with whom Robert B. Collings, Asst. U. S. Atty., was on brief, for appellant.

Verne W. Vance, Jr., Boston, Mass., with whom John D. Leubsdorf and Foley, Hoag & Eliot, Boston, Mass., were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

The government appeals, under 18 U.S.C. § 3731, from an order of the district court dismissing an indictment because of the unlawful composition of the grand jury that returned it.[1] More precisely, the court found a defect in the master jury plan adopted by the Massachusetts District Court and based upon the Massachusetts voting lists pursuant to 28 U.S.C. § 1861 et seq., in that it omits paupers because the Massachusetts voting laws deprive paupers of the right to vote.

The indictment was returned on February 17, 1972. On Friday, March 31, court-appointed counsel filed the motion to dismiss and on Monday, April 3, the court endorsed the motion, "Allowed," and returned it to the clerk's office. It is said that on April 4 the press reported, which was the fact, that the court had allowed the motion without notice or hearing. In any event, on April 5 the court filed an opinion which, after stat-

ing that the defendant had not requested a hearing, and that it proceeded "in the manner familiar to most appellate courts and many trial courts" gave its reasons for dismissing the indictment, D.C., 342 F.Supp. 1262. The government appealed and because of the importance of the matter we ordered an expedited schedule.

Amendment III to the Massachusetts Constitution, and Mass.G.L. c. 51, § 1 provide that "paupers" may not vote. On the other hand, 28 U.S.C. § 1862 provides that no citizen shall be excluded from jury service for various reasons, including "economic status." The court concluded, accordingly, that this statute was demonstrably violated by using, exclusively, the Massachusetts voting lists. It said,

"'Paupers' . . . are defined so as to include a person who receives public aid or assistance and who has not attempted to the best of his ability to provide for himself and his dependents or has been a mendicant. There is no reason to believe that Massachusetts authorities who have prepared voting lists have flouted the Constitutional, statutory, and judicial directions with respect to the exclusion of recipients of welfare."

In indulging in the presumption of performance of official acts, the court did not advert to what have been said to be the four conditions of its exercise.

"It may be said that most of the instances of its application are found attended by several conditions; first, that the matter is more or less in the past, and incapable of easily procured evidence; secondly, that it involves a mere formality, or detail of required procedure, in the routine of a litigation or of a public officer's action; next, that it involves to some extent the security of apparently vested rights, so that the presumption will serve to prevent an unwholesome uncertainty; and, finally, that the cir-

1. The indictment charged the defendant with failure to report for induction. 50 U.S.C.App. § 462.

cumstances of the particular case add some element of probability."

9 Wigmore, Evidence. § 2534. (1940). *See also* E. M. Morgan, Some Observations Concerning Presumptions, 44 Harv. L.Rev. 906 (1931).

Wigmore's first three conditions, if viable, might well be thought not met. As a matter of principle, we are presently more concerned with the last. With respect to this, the government points out that to exclude paupers as defined by the court from the franchise would violate not only 28 U.S.C. § 1862, but the United States Constitution itself, citing Harper v. Virginia State Bd. of Elections, 1966, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169. Hence, it says, as against a presumption that the voting officials follow the Massachusetts law, there is a counter-presumption that they follow the higher authority of the Constitution. As a corollary it might be wondered why, if the number of persons, "substantial by any test of number, or of percentage," found by the court to be denied the franchise are in fact denied, no constitutionally-minded public assistance counsel have been heard from. We think of a more tangible reason why it might at least be questioned whether the officials would follow the Massachusetts law as it construed it: the expense in manpower and money in (1) ascertaining whether each registrant is not only indigent, but, while having the ability and opportunity to work, deliberately became or remained so, and (2) since Massachusetts law does not require re-registration, Mass.G.L. c. 51 §§ 37, 4, reviewing annually, spontaneously, and independently, each voter to see if he has fallen from grace.

■ But assuming the court's presumption to be warranted, a presumption is a device to shift the burden of going forward, or to serve in the absence of evidence. It cannot justify foreclosing the offering of evidence. *Cf.* Yates v. United States, 1 Cir., 1968, 404 F.2d 462, cert. denied 395 U.S. 925, 89 S.Ct. 1781, 23 L.Ed.2d 242. The court's statement, "There is no reason to believe . . ." could properly be made only after the government had had an opportunity to show a reason. As an irrebuttable presumption it is without precedent.

Supplementing its presumption, the court stated, "Judicial notice of the jury lists used in this court since the basis of selection of jurors has been from voting lists affirmatively shows compliance by the Massachusetts voting officials with the Constitutional, statutory, and judicial mandates." The court did not explain what it found in the jury lists to warrant this conclusion. Even when, following the appeal, the government requested that representative jury lists be added to the record, the court, in granting the motion, expanded upon its general views but failed to elucidate how the lists showed that paupers had been denied the vote. Instead, it said that the lists were not "the sole basis for the order." We cannot perceive how they furnished *any* basis. Indeed, the number of jurors shown to be unemployed, which seems the only possible relevant information on the lists, leads the government to argue that the lists reveal the opposite of what the court concluded. We need not pursue this. At the moment it may be said that the only tangible evidence to which the court referred to supplement its presumption of official compliance is a cipher.

■ Nor was the court correct in its definition of a pauper within the Massachusetts denial of the franchise. It is true that dictionaries define a pauper as, "A person destitute of means except such as are derived from charity, specifically, one who receives aid from public poor funds;" Webster's New Int'l. (2d ed. 1954); "1. A very poor person. 2. A person without any means of support, especially a destitute person who depends on aid from tax-based welfare funds;" Random House (1966). A similar definition was given a century and a half ago in the Opinion of the Justices, 11 Pick. (28 Mass.) 538 (1832). The justices stated that paupers were those who did not contribute their share of the

"public charges" but, on the contrary, by the receipt of "aid and assistance" constituted a burden thereon, and held, in accordance with the temper of the times, that such persons could be lawfully denied the privilege of voting. This is no longer the law. The 1832 Opinion of the Justices cited by the court [2] has been rescinded by a series of legislative enactments. Of these the court noted only one, and failed to be alerted by its language to the rest, which plainly reject the interpretation the court placed upon it.

Mass.G.L. c. 51, § 1, provides in pertinent part as follows.

"No person . . . shall be deemed to be a pauper under this section . . . who, to the best of his ability, has attempted to provide for himself and his dependents and has not been a mendicant, and who, through no crime or misdemeanor of his own, has come into grievous need and receives aid or assistance." Mass. G.L. c. 51, § 1.

The court read this to mean that anyone whose receipt of welfare is due to a refusal to attempt to support himself is a disenfranchised pauper. In point of fact, anyone who, being able, refuses to work, cannot qualify for public assistance. Mass.G.L. c. 117 § 3.[3] Hence a person receiving aid and assistance is per se a person *not* denied the franchise.

The quoted paragraph of c. 51, § 1 is a response [4] to a meticulous striking of the word "pauper" from the welfare laws. Mass.Acts, 1928, c. 155, is appropriately entitled *"An Act to eliminate from the relief laws the word 'pauper.'"* The combination clearly demonstrates the court's error in finding "statutory . . . exclusion of recipients of welfare" from the voting lists, and correspondingly undercuts the basis for its conclusion as to the substantial number of persons denied the franchise as paupers.[5]

The case must be remanded to determine who, in fact,[6] are excluded from voting under the limited meaning of c. 51, § 1.[7] We observe, however, before doing so, that indigency is a purely economic status, but deliberate and avoidable refusal to support oneself is something more. The exclusion would seem to attach to the behavior, not the status. Depending upon its findings as to exclusion, the court may face the legal question—on which we presently express no opinion—whether the Massachusetts exclusion of paupers, as defined or as applied, is an exclusion "on account of . . . economic status." If it is not such an exclusion, only constitutional issues would be raised.[8]

2. The court stated that there were three bases for its opinion, "Constitutional, statutory, and judicial directions."

3. "No person shall be eligible for aid or assistance under this chapter who willfully fails without good cause, as determined by the department, to maintain his registration for work as provided in the first paragraph of this section or to accept a referral to or offer of suitable employment." Mass.G.L. c. 117, § 3.

4. See Report of the Attorney General for the year ending November 30, 1931. Mass.Pub.Doc. No. 12, at 16.

5. Defendant's brief, in order to show the reach of the disenfranchising net, contains Census statistics on public aid. In point of the fact, the pool is without fish.

6. It is not inconceivable that Massachusetts election officials, faced with the administrative difficulties of applying the statute, see ante, honor it in the breach.

7. In remanding the case we express no views on defendant's standing, or need thereof, *cf.* United States v. Butera, 1 Cir., 1970, 420 F.2d 564, 567 n. 2, to raise the question, a matter not briefed and, unlike the Massachusetts law, possibly not self-evident. We do suggest that the court's finding that although there was no evidence that defendant refused to support himself, or was a pauper, he had a "cognate interest" because he had court-appointed counsel was over-simplistic.

8. We note that mendicancy, the other aspect of the statutory exclusion see ante, is a crime. Mass.G.L. c. 272, § 63.

Before closing we make general note of our agreement with the government's complaint that the court should not, however it viewed the case, have granted the motion to dismiss without allowing it to respond. Particularly in a case of this importance, the court's statement that it proceeded in a "manner familiar to most appellate courts" does not comport with any method with which we are familiar, or would wish to be familiar. A party's day in court should not have to begin in the court of appeals.

Reversed.