COMMONWEALTH vs. JULIAN T. STONE.

Norfolk.    September 16, 1974. — December 12, 1974.

Present: TAURO, C.J., REARDON, BRAUCHER, HENNESSEY, & WILKINS, JJ.

*Homicide.   Jury and Jurors.   Practice, Criminal,* Selection of jury,
    Disclosure of evidence, Suppression of evidence, Disclosure of evi-
    dence before grand jury, Argument by prosecutor, Assistance of
    counsel, Sentence, Capital case.  *Evidence,* Admitted without objec-
    tion, Of another crime.  *Error,* Whether error harmful.  *Jurisdiction,*
    Of crime.  *Constitutional Law,* Assistance of counsel, Confrontation
    of witnesses.

Where an experienced judge painstakingly interviewed prospective
    jurors in a murder case on their objectivity, there was no error in
    excluding two of them because of their views on capital punish-
    ment. [508]
In a murder case, there was no prejudice to the defendant in allowing the
    district attorney to challenge peremptorily each juror who expressed
    doubts about capital punishment, where this court vacated the death
    sentence on other grounds. [508-509]
Peremptory challenge of prospective jurors by the prosecutor in a
    criminal case is not subject to judicial review. [509]
Where a defendant in a murder case was in no way deprived of his right to
    challenge jurors and had five peremptory challenges remaining after
    empanelment, there was no prejudicial error in failure of the judge to
    dismiss all the jurors chosen because a codefendant had challenged
    jurors satisfactory to the defendant while negotiating a plea. [509]
On the record of a murder case, failure of the prosecution to obtain what
    might have been exculpatory information by calling as a witness a
    person to whom the defendant was not denied access was neither
    suppression of evidence nor a violation of the defendant's right to
    confront witnesses against him under the Sixth Amendment to the
    Federal Constitution. [510-511]
In a murder case where defense counsel elicited testimony from a
    prosecution witness, and the defendant himself made a statement,
    concerning unrelated criminal conduct of his, other references to such
    conduct did not constitute reversible error where either strong
    curative instructions were given or the references were not objected to
    by counsel. [511-513]

In a murder case tried prior to the decision in *Commonwealth* v. *Stewart,* 365 Mass. 99, there was no error in denial of a pre-trial motion by the defendant to inspect grand jury minutes, absent a showing of "particularized need." [513-514]

Where there was evidence at a murder trial that the victim's body was found in a sandpit in a certain town, that four shots were heard coming from the sandpit area at the time of death, and that there were four bullet holes in the victim's skull, there was no error in denying a motion by the defendant for a directed verdict based on the ground that the Commonwealth had failed to prove a charge in the indictment that the murder was committed in that town. [514-515]

Certain misstatements of evidence made by the prosecutor in his closing argument at a murder trial did not warrant reversal of a conviction under G. L. c. 278, § 33E, where there was no exception to the misstatements and the judge instructed the jury to disregard them. [515-516]

Comments on the credibility of witnesses by the prosecutor at the trial of a murder case did not constitute ground for reversal of a conviction where the comments did not appear to be personal beliefs but constituted an argument for the credibility of prosecution witnesses and the judge charged the jury that personal opinions of counsel on credibility were irrelevant. [516]

Where a defendant convicted of murder had requested a particular attorney to represent him and that attorney put on an active, competent defense, not erring in certain inaction complained of by the defendant, it could not be said that the defendant was denied the effective assistance of counsel guaranteed by the Sixth Amendment to the Federal Constitution. [516-517]

Under *Furman* v. *Georgia,* 408 U. S. 238, this court vacated a sentence of death imposed in a murder case and remanded the case to the Superior Court for resentencing the defendant to life imprisonment; there was no merit in a contention by the defendant that under G. L. c. 265, § 2, a sentence to life imprisonment could only be imposed upon a recommendation by a jury and that therefore a new trial was required. [517-518]

INDICTMENT found and returned in the Superior Court on October 1, 1968.

The case was tried before *Paquet,* J.

*Lois M. Lewis* for the defendant.

*Robert B. Russell,* Assistant District Attorney, for the Commonwealth.

REARDON, J. The defendant was indicted for the murder of Dominic R. Cammarata in Canton on June 26, 1967,

and following a trial was found guilty of murder in the first degree without a recommendation. The sentence of death was imposed on January 31, 1969. The trial judge reported the case under the provisions of G. L. c. 278, § 30, and on May 13, 1974, the single justice allowed full and direct appeal under G. L. c. 278, §§ 33A-33G.

The facts which a jury could have found are simply stated. Eleanor Cammarata, the wife of the victim, and her friend, Sandra Taylor, conceived the idea of murdering the victim, with the expectation of receiving the amount of insurance which they thought to be written on his life. One William Holden was informed of the idea, and the defendant shortly afterwards came into the conspiracy which resulted in the death of Cammarata, whose body was found in a sandpit in Canton with bullet wounds in his head and whose hands were handcuffed behind his back. We do not elaborate on the foregoing and will make reference to additional testimony as the need may arise in the treatment of the assignments of error with which we deal seriatim.

1. Assigned as error is the fact that two jurors were excluded because of their views on capital punishment at the voir dire of prospective jurors. A review of the extensive proceedings which lead to the selection of the jury discloses careful treatment by the judge as he asked jurors whether their opinion on the death penalty was such that they could not make an impartial decision on the guilt of the defendant. We see no virtue in discussing once again an issue which recently received full treatment in *Commonwealth* v. *McAlister,* 365 Mass. 454 (1974), except to note that a judge of large experience painstakingly interviewed the jurors to the end that they might arrive at a verdict "uninfluenced by any personal views or opinions for or against punishment by death or by imprisonment for life." *Commonwealth* v. *Mangum,* 357 Mass. 76, 78 (1970). The defendant here suffered no deprivation of a jury which could fairly determine his guilt or innocence.

2. The defendant complains that the district attorney was allowed systematically to exclude each juror who

expressed any doubt about capital punishment. Since, however, the end result of this opinion will be to vacate the sentence of death, the defendant was not prejudiced. Furthermore, the prosecutor's exercise of peremptory challenges is not subject to judicial review. "The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control." *Swain* v. *Alabama,* 380 U. S. 202, 220 (1965), citing *Lewis* v. *United States,* 146 U. S. 370, 378 (1892). *Commonwealth* v. *Talbert,* 357 Mass. 146, 147 (1970).

3. Error is next assigned that the codefendant in the case below, Eleanor Cammarata, was allowed to challenge qualified jurors acceptable to the defendant while she was negotiating a plea of guilty to a lesser charge. The argument is that the trial judge learned of these negotiations during the empanelment of the jury and thereupon should have dismissed the jurors thus far chosen to allow the defendant a jury of his own choosing. There was, however, no prejudice. The defendant has the right to reject jurors but not to select them. *United States* v. *Marchant,* 12 Wheat. 480 (1827). *United States* v. *Parker,* 103 F. 2d 857 (3d Cir. 1939), cert. den. 307 U. S. 642 (1939). *United States* v. *Puff,* 211 F. 2d 171, 184-185 (2d Cir. 1954), cert. den. 347 U. S. 963 (1954). See *Commonwealth* v. *Mangum,* 357 Mass. 76, 80 (1970). In fact the defendant, who had available sixteen peremptory challenges pursuant to G. L. c. 234, § 29, had five remaining after the entire jury were empanelled. Thus no one objectionable to him served on his jury. He is not entitled to ask for more.

4. There is some argument by the defendant that at the time of his trial "paupers" were excluded from juries in Massachusetts, and that this denied him due process. No assignment of error raised this contention and there was no objection to the ultimate jury composition below. We pass over these failures to preserve alleged rights only to remark that the issue was recently discussed in *United States* v. *Andrews,* 462 F. 2d 914 (1st Cir. 1972), which involved a Federal jury selected in conformity with Massachusetts

law. Suffice it to say that the judge was not convinced that "paupers" under the peculiar definition set out in G. L. c. 51, § 1,[1] actually constituted an "economic class" in contravention of 28 U. S. C. § 1862 (1970), which forbids the exclusion of jurors from Federal juries on the basis of their economic status. We have the same difficulty discovering any constitutional infirmity in the jury selection but we need say no more, not only because of the failure to make the proper assignment of error but also because there was no attempt to prove below that "paupers" under the statute constitute a distinct and identifiable class. The burden of proof in such matters is clearly with the defendant. *Hernandez* v. *Texas,* 347 U. S. 475 (1954). *Swain* v. *Alabama,* 380 U. S. 202, 205 (1965).

5. It is assigned as error that the prosecution suppressed exculpatory evidence and denied the defendant the opportunity to confront a witness. This argument is based on evidence which might have come from one Cornelius Brewster, referred to as "Bill, the Negro," throughout the trial. He was allegedly privy to certain confessions made by the defendant to others who did testify. It is argued that the Commonwealth's failure to call Brewster as a corroborative witness indicates that his testimony would have been unfavorable to the prosecution. A line of cases stemming from *Brady* v. *Maryland,* 373 U. S. 83 (1963), holds that suppression of evidence favorable to the accused requested by the defendant violates due process where the evidence is material to guilt or innocence. See *Giles* v. *Maryland,* 386 U. S. 66 (1967); *Moore* v. *Illinois,* 408 U. S. 786 (1972). However, defense counsel made no request at the trial for any information relating to Brewster. We have generally

---

[1] Prior to amendment in 1972, G. L. c. 51, § 1, denied to "paupers" the right to vote, thereby excluding such persons from the jury service under G. L. c. 234, § 1. However, the definition of "pauper" was considerably limited by the following language in G. L. c. 51, § 1: "No person . . . shall be deemed to be a pauper under this section . . . who, to the best of his ability, has attempted to provide for himself and his dependents and has not been a mendicant, and who, through no crime or misdemeanor of his own, has come into grievous need and receives aid or assistance." See *United States* v. *Andrews,* 462 F. 2d 913, 917 (1st Cir. 1972). The 1972 amendment eliminated the reference to "paupers" in describing the qualifications of voters. St. 1972, c. 587, § 1.

required that absent a request, and where the suppression by the prosecution is not deliberate, the evidence must meet a high standard of materiality, a substantial probability of altering the result. *Commonwealth* v. *Earl,* 362 Mass. 11, 16 (1972). *Commonwealth* v. *Roberts,* 362 Mass. 357, 362 (1972). *Commonwealth* v. *Hurst,* 364 Mass. 604, 607 (1974). See *United States* v. *Keogh,* 391 F. 2d 138, 146-148 (2d Cir. 1968). The defendant's failure to make such a request in this instance is significant for it may have stemmed from a calculated defense strategy to avoid use of the evidence. In fact, the transcript would indicate that the full identity or whereabouts of Brewster was either known to the defendant or not wanted. Furthermore, the trial judge found that Brewster had refused to be interviewed by the prosecution. The prosecution's mere failure to obtain conceivably exculpatory information from a potential witness does not constitute suppression of evidence, at least here where there is no allegation that the defendant was denied access to the witness. Compare *Commonwealth* v. *Balliro,* 349 Mass. 505, 516-518 (1965). Likewise, the failure of the prosecution to call Brewster as a witness does not violate the defendant's Sixth Amendment right of confrontation. *United States* v. *Polisi,* 416 F. 2d 573, 579 (2d Cir. 1969). *United States* v. *Bryant,* 461 F. 2d 912, 916 (6th Cir. 1972).

6. The defendant argues further that numerous prejudicial references were made during the trial to his criminal conduct unrelated to the trial and that the jurors were thereby prejudiced. Initially the prosecutor made reference in his opening statement to the defendant's compulsory departure to Pennsylvania "to avoid certain authorities." There was a prompt objection and the trial judge instructed the jury to disregard the statement. This constituted an adequate cure of whatever prejudice may have resulted. *Commonwealth* v. *Bellino,* 320 Mass. 635, 645 (1947), cert. den. 330 U. S. 832 (1946). *Commonwealth* v. *Gibson,* 357 Mass. 45, 48-49, (1970), cert. den. 400 U. S. 837 (1970). *Commonwealth* v. *Rucker,* 358 Mass. 298, 300 (1970).

It is evident from the fact that defense counsel made no

objection to questions directed to Eleanor Cammarata referring to the defendant's involvement in a prior robbery that the defense was not too concerned about the admission of this evidence.[2] As we pointed out in *Commonwealth* v. *Underwood,* 358 Mass. 506, 510 (1970), it is not uncommon for defense counsel to forgo objections as part of trial tactics. See *Commonwealth* v. *Foley,* 358 Mass. 233, 236 (1970); *Commonwealth* v. *Veal,* 362 Mass. 877 (1972); *Commonwealth* v. *Miskel,* 364 Mass. 783, 792 (1974). It is noteworthy that defense counsel himself elicited testimony in cross-examination from one William Holden relating to the defendant's prior criminal activities, and that the defendant mentioned them in his unsworn statement to the jury prior to their taking the case. The whole picture is not one which shows such a substantial risk of a miscarriage of justice as would require review in the absence of a proper exception. *Commonwealth* v. *Concepcion,* 362 Mass. 653, 654 (1972).

Other arguments now made to us that the defendant was prejudiced by references to his criminal activities do not persuade us that he was. Such references as were made to them by the prosecutor in his closing statement were not objected to, and there is thus no ground for relief.

Three letters written by the defendant containing references to the parole board and to time served in jail and in prison at Walpole were admitted over objection and exception. Prior to, and immediately after, the reading of these letters there was careful instruction by the judge advising the jury not to consider references to any troubles that the defendant may have had at any other institution or with the authorities. He reiterated this warning in his charge stating, "Whether or not he had other prior troubles ... [is] not material to the decision in this case. The question is did this man kill Cammarata." While we have

---

[2] Defense counsel's only objection during this line of questioning appears in the transcript several pages after the first reference to the prior robbery, and the exception taken there quite plainly went only to the leading nature of the questions, not to the references to prior criminal conduct.

on occasion held such references admitted over objection to be prejudicial error, see *Commonwealth* v. *Stone,* 321 Mass. 471, 473 (1947); *Commonwealth* v. *Banuchi,* 335 Mass. 649, 654 (1957); *Commonwealth* v. *Welcome,* 348 Mass. 68, 70 (1964); *Commonwealth* v. *Nassar,* 351 Mass. 37, 45 (1966), we have on the other hand considered prompt instructions by the judge adequate to cure the introduction of improper evidence. *Commonwealth* v. *Bellino,* 320 Mass. 635 (1947). *Commonwealth* v. *Gibson,* 357 Mass. 45 (1970). *Commonwealth* v. *Rucker,* 358 Mass. 298, 300 (1970). *United States* v. *Plante,* 472 F. 2d 829 (1st Cir. 1973), cert. den. 411 U. S. 950 (1973). As we stated in *Commonwealth* v. *Gordon,* 356 Mass. 598, 604 (1970), it cannot be assumed that jurors will ignore strong instructions to disregard certain matters. In fact this court has found limiting instructions to be sufficient to allow the introduction of written documents showing prior criminal activity. *Commonwealth* v. *Locke,* 338 Mass. 682, 689 (1959). Having said this, we note that it might have been well for the judge to consider excising the references complained of in the letters rather than admitting them in their entirety. The lapse, if it was one, was not sufficiently prejudicial to require reversal.

7. The defendant has argued as error the judge's denial of a pre-trial motion to inspect grand jury minutes. This was a motion to inspect the minutes generally and, specifically, to inspect those dealing with the witness Sandra Taylor. We have recently held in *Commonwealth* v. *Stewart,* 365 Mass. 99, 105-106 (1974), that the prosecution must supply defense counsel with grand jury testimony of any person called as a witness for the Commonwealth which is related to the subject matter of his testimony at trial. The *Stewart* case is, however, prospective only. *Id.* at 105-106. Under the law in effect at the time of trial there was no right to general inspection. The motion was addressed to the judge's discretion. *Commonwealth* v. *Balliro,* 349 Mass. 505, 518 (1965). *Commonwealth* v. *Abbott Engr. Inc.* 351 Mass. 568, 578-579 (1967). Inspection was allowed only on a showing of "particularized need." *Commonwealth* v. *Kier-*

*nan,* 348 Mass. 29, 36 (1964), cert. den. sub nom. *Gordon* v. *Massachusetts,* 380 U. S. 913 (1965). *Commonwealth* v. *Ladetto,* 349 Mass. 237, 244-245 (1965). *Commonwealth* v. *Carita,* 356 Mass. 132, 141-142 (1969). *Commonwealth* v. *De Christoforo,* 360 Mass. 531, 534-536 (1971). The evident desire of the defendant for the grand jury testimony of Sandra Taylor was to avoid surprise at trial, but under pre-*Stewart* law this was not enough. See *Commonwealth* v. *Kiernan,* 348 Mass. 29, 34-35 (1964), cert. den. sub nom. *Gordon* v. *Massachusetts,* 380 U. S. 913 (1965). Sandra Taylor was questioned about her grand jury testimony at trial, and if any inconsistencies arose the defendant might have renewed his motion for inspection at that time. *Commonwealth* v. *Carita,* 356 Mass. 132, 141-142 (1969). His failure to do so precludes our finding error. With respect to the witness Eleanor Cammarata, defense counsel was provided with her grand jury testimony which he employed during the trial.

Furthermore, in this case, following the trial the judge examined the grand jury testimony to see whether the testimony of the witnesses was consistent with their trial testimony. See *Commonwealth* v. *De Christoforo,* 360 Mass. 531, 536 (1971). The judge concluded that no evidence appeared favorable to the defendant which had been available to, or withheld by, the prosecution. The record is clear that the grand jury minutes received thorough review at the hands of the trial judge and that no review here in the light of his conclusions would be helpful.

8. After all the evidence was presented, the defendant moved for a directed verdict of not guilty. The motion was denied and the exception noted. The defendant's argument is that the Commonwealth failed to prove beyond a reasonable doubt that the murder was committed in the town of Canton as charged in the indictment. The sole question before us is whether the evidence was sufficient to submit the case to the jury. *Commonwealth* v. *Altenhaus,* 317 Mass. 270, 271 (1944). *Commonwealth* v. *Baron,* 356 Mass. 362, 365 (1969). In this instance, and in the face of the defendant's arguments, the jury could have found that the

body discovered in the Canton sandpit was that of a victim killed in Canton. While there were no eyewitnesses to place the defendant at the scene, there was fresh blood on the body, two doctors placed the time of death about 6 A.M., a witness testified to hearing four shots at that time coming from the area where the body was found, and four bullet holes were discovered in the victim's skull. This was enough evidence from which the jury could find beyond a reasonable doubt that the crime took place in Canton. *Commonwealth* v. *Knowlton,* 265 Mass. 382 (1928). *Commonwealth* v. *Fleming,* 360 Mass. 404, 406-407 (1971), and cases cited.

9. The defendant complains that numerous alleged prejudicial references to facts not in evidence nor testified to were made by the prosecutor in his closing argument. Admittedly there were some misstatements of evidence.[3] While no exception was taken to the alleged improper remarks, and no request for special instructions was made, *Commonwealth* v. *Lussier,* 364 Mass. 414, 424-425 (1973), the court can still review the question under the powers granted it by G. L. c. 278, § 33E. *Commonwealth* v. *Nordstrom,* 364 Mass. 310, 314 (1973). We have reviewed the comments of the prosecutor and conclude that the remarks in their over-all context were not so prejudicial as to require reversal. We are reinforced in this conclusion in reviewing the judge's charge to the jury where he emphasized that the closing statements of counsel are not evidence, that any inadvertent erroneous statement of testimony was to be disregarded, and that the jury's recollection was to be wholly relied on. *Commonwealth* v. *Martin,* 357 Mass. 190, 193 (1970). *Commonwealth* v. *De Christoforo,* 360 Mass. 531, 538 (1971). *Donnelly* v. *De Christoforo,* 416 U. S. 637, 640-645 (1974). In sum, we have reviewed all the

[3] Most serious of these was a remark which could be read as attributing to the witness William Holden the testimony that the defendant confessed to him to having shot the victim four times. Holden's actual testimony was that the defendant said, "I shot him in the chest. And then when he fell I shot him in the head." Since the victim was shot four times in the head, this testimony may be construed as conflicting with the facts, weakening Holden's credibility somewhat. The prosecutor's remarks were not objected to.

statements alleged to constitute prejudice and conclude that reversal is not required.

10. The prosecutor's comments on the credibility of the witnesses do not constitute ground for reversal. The prosecutor's statements read in their entirety are blameless in that they do not appear to interject a personal belief in the credibility of the various witnesses. *United States* v. *Cotter,* 425 F. 2d 450, 452 (1st Cir. 1970). Rather, they represent an argument in support of the credibility of the Commonwealth's key witnesses, based on the demeanor and motive of the witnesses and the consistency of their stories.[4] Furthermore, the judge's charge made it clear that the personal opinions of counsel as to credibility were irrelevant. See *Patriarca* v. *United States,* 402 F. 2d 314, 322 (1st Cir. 1968).

11. The defense has joined the large number of other defendants who in recent years have alleged ineffective assistance of counsel as a denial of the Sixth Amendment right. This argument does not commend itself to us, as we have had previous occasion to state, unless it is solidly based. Complaint is made here that the jury were allowed to hear that Eleanor Cammarata, a codefendant as an accessory, had changed her plea to guilty of conspiracy. This could hardly have been kept from the jury. *Commonwealth* v. *Giacomazza,* 311 Mass. 456, 466 (1942). *Commonwealth* v. *Sousa,* 350 Mass. 591, 595-596 (1966). As a matter of fact defense counsel requested that the jury be told of the disposition of the Cammarata case and used that fact in attacking her credibility. Other alleged failure to object, i.e., to the introduction of a suit coat and a pair of pants found in the defendant's possession and formerly belonging to the victim, might well have been based on the apparent strategy of the defense not to dispute the defendant's involvement in the conspiracy and his friendship with

---

[4] Although the prosecutor stated that various witnesses were "truthful" or "honest," the context was an argumentative one, e.g., "I *submit* . . . that their stories are honest" (emphasis supplied); and that when we "evaluate their demeanor . . . I think we have to come to the conclusion that they were telling the truth."

Eleanor Cammarata. Nor did counsel err in not objecting to the judge's statement to the jury that the Supreme Judicial Court has the power to revise or set aside his rulings which might be erroneous. *Commonwealth* v. *French,* 357 Mass. 356, 404 (1970), judgments vacated as to death penalty sub nom. *Limone* v. *Massachusetts,* 408 U. S. 936 (1972). *United States* v. *Greenberg,* 445 F. 2d 1158, 1162 (2d Cir. 1971). That the judge was not asked to include, and did not include, the "accomplice charge" in his instruction to the jury cannot be said to have resulted from the ineffectiveness of counsel, particularly since, had counsel requested the charge, the judge was not required to include it. *Commonwealth* v. *Beal,* 314 Mass. 210, 232 (1943). *Commonwealth* v. *French,* 357 Mass. 356, 396 (1970), judgments vacated as to death penalty sub nom. *Limone* v. *Massachusetts,* 408 U. S. 936 (1972). We observe that the defendant had specifically requested representation at trial by the counsel who did represent him. A review of the transcript gives no indication that counsel should be subjected at this juncture to the statement that he was ineffective. Rather, he actively presented pre-trial motions, took part in the voir dire, and put the Commonwealth's three principal witnesses through intensive cross-examination, bringing out their roles in the conspiracy, challenging their credibility, and occasionally casting doubt on some of the evidence. We have fully elaborated the requirements in this area in *Commonwealth* v. *Saferian, ante,* 89, 96-99 (1974), and we shall not repeat them here. It should be borne home, however, that it is not our intention to second guess competent lawyers working hard for defendants who turn on them when the jury happen to find their clients guilty.

12. The defendant argues that the death penalty cannot be imposed in view of *Furman* v. *Georgia,* 408 U. S. 238 (1972), and also that under G. L. c. 265, § 2, this court does not have the power to remand for the imposition of a life sentence, the theory being that under the statute a life sentence can be imposed only on a jury recommendation. In recent decisions this court has simply vacated the death

sentence and directed the trial judge to resentence the defendant for life. *Commonwealth* v. *LeBlanc,* 364 Mass. 1, 14-15 (1973). *Commonwealth* v. *A Juvenile,* 364 Mass. 103, 108-109 (1973). *Commonwealth* v. *McLaughlin,* 364 Mass. 211, 233-235 (1973). *Commonwealth* v. *McAlister,* 365 Mass. 454, 464 (1974). Since under the statute the jury have necessarily found guilt before they even reach the question of sentencing, *Commonwealth* v. *Arsenault,* 361 Mass. 287, 293 (1972), we can see no justification for granting a new trial as the defendant requests.

13. We have considered all other assignments of error and see no merit in those not discussed above.

14. Consonant with our duty we have reviewed the record and the transcript under G. L. c. 278, § 33E, and find no grounds for reversal, or other possible relief provided under that statute.

15. The judgment, in so far as it imposes a death sentence, is reversed, and the case is remanded to the Superior Court, which is to resentence the defendant to life imprisonment.

*So ordered.*