## COMMONWEALTH
vs.
**Gerald B. BUCKLEY, Jr.**

### Nos. 00002, 00003

Superior Court/Essex, ss.
Commonwealth of Massachusetts
December 10, 1982

**Jane Haggerty, Asst. D.A.,** counsel for plaintiff.
**Maureen B. Brodoff,** counsel for defendant.

## · RULINGS, ORDER AND MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR A NEW TRIAL

### Background.

On November 20, 1979, after a trial before a jury, defendant Buckley was convicted of rape and assault and battery by means of a dangerous weapon. He thereafter filed a motion for a new trial and after several delays, which are documented in letters from this court to defendant's counsel, defendant's motion was heard on October 13, 1982.

As grounds in support of his motion, defendant asserts that he was denied a fair trial because (1) matters extraneous to the trial were conducted in the presence of the jury; (2) the trial judge responded to a jury question concerning time served by defendant as a consequence of a prior conviction; (3) the trial judge's charge was prejudicially erroneous because (a) it made reference to defendant's right of appeal; (b) it contained a misleading statement concerning defendant having been convicted on prior occasions; (c) it diluted the reasonable doubt standard and the presumption of innocence; (d) it relied on the victim's testimony to define the elements of the offenses charged; and (e) its instructions on credibility were erroneous; (4) testimony regarding defendant's failure to speak after Miranda warnings were given was admitted; and (5) testimony from a witness as to other rapes in the area and as to the reasons why the witness kept the door to her home locked was not excluded.

### Facts.

Defendant was indicted on one charge of rape and one charge of assault and battery with a dangerous weapon. Trial commenced on November 6, 1979 and an attorney other than counsel who now presses defendant's motion for a new trial represented him at trial. From the transcript, the relevant testimony at trial indicated the occurrence of the following events. On June 22, 1979 a Kathleen Mitchell (the victim) and a Susan Monteiro, co-workers at the Wilmington General Electric, completed their 7:00 a.m. to 3:30 p.m. shift and then went to a lounge known as the Oaks situated in Tewksbury. They arrived at approximately 4:00 p.m. and there were then six to eight people present there, including defendant. The two women ordered drinks and shortly thereafter defendant initiated a conversation with them. According to the victim's testimony, defendant was dressed in shirt, tie, pants and a vest. Defendant addressed most of his conversation to her, telling the victim that he was the chief of hematology at the Massachusetts General Hospital, although in reality he was a salesman for a local company. The victim expressed an interest in defendant's claimed occupation, informing him that she was interested in becoming a laboratory technician. The victim and defendant then exchanged views on trucks, music, and divorce. Defendant informed the victim that he was not married.

After Susan Monteiro left the Oaks at 5:30 p.m. to pick up her son, defendant

and the victim remained there talking. At approximately 7:00 p.m., the victim suggested that they go outside to smoke a marijuana cigarette which she had in her truck. Prior to leaving the Oaks, the victim testified that she had had three beers.

The victim obtained the marijuana cigarette from her truck and then proceeded to the defendant's truck, which had a radio. Defendant then pulled out of the parking lot and began driving. The victim testified that as they smoked the marijuana she asked defendant where he was going and he responded that he was taking her to see a waterfall. The victim planned to meet friends later that evening and she asked that defendant take her back to the Oaks. However, defendant continued driving away from the Oaks. After a while defendant drove off the road and followed a dirt path into the woods to the point where his truck stopped when its front end hit a log. The victim and defendant then kissed and, during their embrace, a barrette fell from the victim's hair. She then proceeded to look for it and opened the truck's passenger door.

According to the victim, defendant then exited the truck and walked around to her side and he grabbed her from behind while pressing a knife to her throat. Defendant then dragged her into the woods and started tearing at the victim's clothing. The victim then informed him that she would undress herself and she proceeded to do so. Once she was undressed, defendant indicated that he desired that she perform fellatio; however, she was sobbing and responded that she could not. Defendant then proceeded to have forcible sexual intercourse with the victim.

Defendant's version of what occurred tracked the victim's testimony up to the time they exited the Oaks. According to defendant, the victim wanted to smoke marijuana in the parking lot. Because it was still light, he thought it more prudent that they drive somewhere where they would be less visible. After the truck collided with the log in the woods, defendant and the victim kissed and her barrette fell out of her hair. They started searching for it but ended up walking hand in hand into the woods where, according to defendant, they engaged in consensual sexual intercourse. Afterwards, as they walked back toward the truck, defendant testified that he apologized to the victim and informed her that he was married. At that point the victim became angry and refused to be driven back to the Oaks.

After the incident occurred, the victim proceeded to walk to the road. She stopped at the home of a Ruth Walker and asked Mrs. Walker to call for a taxi. The victim informed Mrs. Walker that she had just had a fight with her boyfriend. Mrs. Walker noted the victim's disheveled appearance and asked her if she wanted her to call the police because many rapes had occurred in that particular area. The victim then broke down and informed Mrs. Walker that she had been raped. Mrs. Walker then telephoned the police.

The victim thereafter was able to locate the area where the incident occurred and the police later found her barrette there. She was taken to a hospital and tests performed which revealed evidence of semen on her underclothes and dungarees. The victim later identified defendant from a photograph and he was arrested in June, 1979. On November 14, 1979 after trial a jury found defendant guilty of both rape and assault and battery with a dangerous weapon.

**Rulings and Memorandum of Decision.**

A trial judge may grant a motion for a new trial if it appears that justice may not have been done. **Commonwealth v. Brown,** 378 Mass. 165, 170 (1979). The decision to grant or deny the motion is largely discretionary and in connection therewith a court is entitled to consider the credibility of witnesses and the trial record. **Id.** at 171. In the absence of an objection as reflected by the trial transcript, there must be a showing of grave prejudice or the substantial likelihood that a miscarriage of justice has

occurred. **Commonwealth v. Grace,** Mass. Adv. Sh. (1980), 2345, 2348.

In this case defendant claims nine specific instances of error which he argues served to deny him a fair trial and deprived him of due process of law. These claims will be considered **seriatim** as follows.

**(1) Extraneous Matters Brought Before the Jury.**

In support of his motion, defendant and his spouse claim that defendant's trial was interrupted on three occasions while the court conducted unrelated business.[1] The trial transcript does not reflect any of the claimed interruptions. When a motion for a new trial is based on facts which are neither agreed upon nor apparent from the face of the record, a defendant has the burden of proving the existence of such facts. See, **Commonwealth v. Brown, supra** at 171 quoting **Commonwealth v. Bernier,** 359 Mass. 13, 15 (1971). Here, defendant has failed to prove that the jury before whom he was tried was present at the time a person charged with the rape of his stepdaughter was brought before the court. That allegation is plainly refuted by the transcript of the person so charged which notes that no jury was present.[2]

Defendant also claims that this court interrupted his trial to introduce a newly appointed justice of the Superior Court. Although there is no mention of this interruption in the trial record, the assistant district attorney who presented the case also recalled this incident including the fact that the jury was present. Defendant claims that this court's light-hearted and joking introduction of a newly sworn-in justice of the Superior Court as a former prosecutor who had convicted many of this court's innocent former clients was prejudicial to his case and hence entitles him to a new trial. While this court finds that this incident did in fact occur, it also finds that defense counsel neither objected, moved for a mistrial, nor requested a polling of the jury. While a defendant is entitled to a trial conducted with gravity and decorum, there has been

no showing that this incident in any way either detracted from this right or resulted in the substantial likelihood that a miscarriage of justice occurred, especially in view of the overwhelming evidence of defendant's guilt.

The final claim of extraneous matters brought to the jury's attention involves the arraignment of a Charles Pierce, charged with murder and assault with intent to commit rape. The Pierce transcript notes that the jury was present on November 13, 1979 during Pierce's arraignment. This court at that time prefaced the interruption by explaining to the jury that the interruption was not a normal occurrence; however, it was required administratively because of Pierce's need for immediate medical attention. This interruption occurred after both closing arguments had been made but before this court gave its instructions.

At his arraignment, Pierce entered a plea of not guilty to both charges against him. The assistant district attorney representing the Commonwealth's interests requested that Pierce be held without bail because the murder had occurred ten years before. He then proceeded to give a brief description of the circumstances involved (**Pierce** Tr. 13), including the fact that death occurred by asphyxiation. After stating that Pierce was charged with assault with intent to commit rape, the district attorney noted that he bit the victim's nipple. Then defense counsel did not object, either before or after Pierce's arraignment, and he did not claim a mistrial or request a polling of the jury. Defendant, however, now claims that this incident was irremediably prejudicial and presents sufficient grounds for a new trial. This court disagrees.

---

[1] Defendant originally alleged that a fourth interruption occurred but there is no evidence to support this claim.

[2] On the date in question, two men were brought before the court who had been charged with raping their daughters. In neither case was the jury present. See **Hoyt** Tr. 5, rape of step-daughter; **Ricci** Tr. 4, rape of daughter.

I find that the jury in this case was present at Pierce's arraignment. In determining whether there was a potential for prejudice, this court must focus on the probable effect of the extraneous facts on a "hypothetical average jury." **Commonwealth v. Fidler,** 377 Mass. 192, 201 (1979). Here, Pierce was arraigned on a charge markedly different from that on which defendant was tried. The circumstances of each case are not comparable to the average jury. In addition, Pierce was elderly, arthritic, slightly deaf and ill-clad. By comparison, defendant appeared youthful, articulate and well-dressed. The contrast, in-front-of-the-jury, between the physical appearance and the circumstances of each case could only reflect positively on defendant when considered by an average jury. Defense counsel must have concurred in this assessment because, as was noted, there was no objection to Pierce's arraignment in the presence of the jury. "A conscious, tactical choice by experienced defense counsel cannot now be converted into a claim of error." **Commonwealth v. Stone,** 366 Mass. 506, 516 (1974). Although in hindsight it would have been preferable for Pierce's arraignment not to have taken place in front of the jury, this court finds and rules that the Commonwealth has demonstrated lack of prejudice beyond a reasonable doubt on that issue.

(2) **Jury Charge.**

Defendant claims five errors occurred in this court's instructions to the jury. When determining whether a charge is proper, it must be considered as a whole "since the adequacy of instructions must be determined in light of their overall impact on the jury." **Commonwealth v. Sellon,** Mass. Adv. Sh. (1980), 789, 800. When the instructions which were given are examined both in isolation from each other and in their entirety, it is clear that no error has been committed and in fact defendant's claims border on the frivolous.

First, defendant claims that reference was made to his right of appeal. The reference occurred in the context of explaining to the jury that they were to rely on their own memories as to the testimony of witnesses because no stenographic records would be available for the reason that they are for "purposes of appeal." (Buckley Tr. 415). That was the sole reference to an appeal and it cannot reasonably be construed as conveying to the jury the fruitlessness of their verdict. Indeed, earlier in the instructions the court took great pains to impress upon the jury that the determination of guilt or innocence was solely their province. (**Buckley** Tr. 399). In this context, there was clearly no error.

The second claim by defendant is that this court misled the jury into believing that defendant had been convicted on prior occasions. Defendant had previously been convicted of rape and kidnapping, both arising out of the same occurrence. This court allowed the Commonwealth to impeach the defendant's credibility with evidence of this prior conviction only after the reference to rape was deleted. Defense counsel suggested, instead, that defendant be questioned on convictions for kidnapping and a prior felony. (**Buckley** Tr. 251). Because the dates for the kidnapping and felony convictions were identical, defense counsel suggested that the jury would infer that the unnamed felony was in fact a rape conviction. In the alternative, defense counsel did not want to leave the jury with the impression that defendant had been convicted on more than one occasion. This matter is one of trial tactics and the choice was left with defense counsel and the record demonstrates that he was fully cognizant of the problems associated with either option. It was only after a lengthy conference that defendant testified and this court can only assume that defense counsel took a calculated risk. Defendant's past record was not belabored in the jury's instructions; it was only referred to as it related to credibility. (**Buckley** Tr. 402). There was clearly no error.

Defendant's third claim is that the reasonable doubt standard and presumption of innocence were "diluted" in a prejudicially erroneous manner. In charging the jury on reasonable doubt, this court read directly from **Commonwealth v. Webster**, 5 Cush. 295, 320 (1850). This charge was specifically deemed appropriate in a recent case, **Commonwealth v. Atkins**, Mass. Adv. Sh. (1982) 593, 602. Before reaching this charge; moreover, this court clearly admonished the jury to bear in mind throughout their deliberations that the "defendant is presumed innocent unless and until the Commonwealth proves his guilt (sic) to all twelve of you . . ." **(Buckley** Tr. 395).

Defendant also alleges that this court relied on the victim's testimony in defining the necessary elements of the offenses charged. According to defendant, the charge improperly invaded the province of the jury because the instructions hinged on the victim's version which, if believed, amounted to proof of the elements beyond a reasonable doubt. This argument unduly tortures the instructions given to the jury. As reflected in the transcript, this court provided legal definitions for the offenses of rape and assault and battery with a deadly weapon. **(Buckley** Tr. 404-407). In the interest of clarity, this court also provided practical examples of the application of these legal concepts. **(Id.**). Reasonable doubt was articulated and emphasized as the standard of proof.

The defendant's defense to the rape charge against him was consent. In such a case, a jury verdict will depend on findings of credibility. At no point, did this court advance the instruction that acceptance of the victim's version of the event would establish proof beyond a reasonable doubt that defendant was guilty of the crimes charged. Instead the jury was emphatically and repeatedly informed that they were the sole fact finders **(Buckley** Tr. 408) and were free to believe or disbelieve any or all of the witnesses' testimony. **(Buckley** Tr. 402).

Defendant's final claim of error relating to the jury charge concerns the instructions pertaining to credibility. This court charged in relevant part as follows:

You might consider the appearance of the witness as he or she testified; their conduct; their manner on the stand; their memory; their opportunity to observe whatever they were testifying to; their attitude; whether or not the witness is friendly to one side or the other; or hostile or unfriendly; whether or not the witness has an interest in the outcome of the case; or is truly impartial. Where is the witness coming from? Does the witness have a motive in testifying in a particular way? Does the witness have a bias or prejudice? We all do. Do you have a sense that the witness rose above the witness' bias or prejudice? What opportunity did the witness have to observe, to hear, to be informed about the matter that he or she was testifying to? Did the witness in the past make an inconsistent statement? And, if so, does that indicate that the witness is a liar? Or does it just indicate that the witness' memory is not all that great? Like lots of our memories are not all that great?

**(Buckley** Tr. 399-401). These instructions merely enumerated the factors that a jury might choose to consider when evaluating the credibility of witnesses. Defendant argues that they were unduly prejudicial because, according to him, he was the only witness to have an interest in the outcome of the case. This position is not only untenable, it is patently frivolous. The instructions clearly applied to assessing the credibility of all witnesses, not merely defendant. **(Buckley** Tr. 399). Defendant was not the only witness who may have had an interest in the case; the victim was also an interested party.

The demeanor of a witness, an interest

in the outcome of the case, prior inconsistent statements and the ability to observe, remember and relate are all crucial factors in determining credibility. **Commonwealth v. Atkins, supra** at 602. It was not an error to inform the jury that they could consider these indicia of truthfulness when performing their fact-finding role.

Prior to dismissing the jury for deliberation, this court requested that both counsel approach the sidebar to determine whether there was any other matters they would like to bring to the jury's attention. At this time, the court asked defense counsel if he had any objection to the charge as presented. Defense counsel had no objection but suggested that the court emphasize the stringency of the burden of proof in a criminal case (**Buckley** Tr. 411) and this suggestion was acted upon by the court. (**Buckley** Tr. 413).

After considering the instructions individually and as a whole, this court finds that there is not a substantial likelihood that there was a miscarriage of justice.

(3) **Jury Questions During Deliberations.**

In the late afternoon of November 13, 1979, the jury transmitted several questions to this court. (**Buckley** Tr. 416). First, the jury asked this court how many previous offenses defendant had been convicted of. This court answered this question based on the evidence presented at trial. The next question concerned the amount of time served. The court informed the jury that defendant had been sentenced to twelve years and a day in Concord although he had served only a year. The final question raised by the jury concerned the potential sentence for the defendant were the defendant found guilty. The court refused to answer this question after explaining to the jury that it was its function to impose a sentence. (**Buckley** Tr. 418). Defense counsel then objected to the court's recitation of facts concerning the defendant's prior convictions. (**Buckley** Tr. 419). Based on the questions presented by the jury and the response of the court, it cannot be said that a prejudicial error occurred. This court only clarified factual points which the jury could not recall. These issues may or may not have borne on the ultimate verdict. From defendant's viewpoint, however, these factual questions were more appropriately resolved by a direct court response rather than leaving the jury to speculate on the prior convictions and the period of incarceration served by the defendant.

(4) **Trial Testimony.**

The final errors asserted by defendant concern the testimonial evidence presented at trial. First, defendant contends that it was an error to admit testimony regarding his failure to speak after receiving **Miranda** warnings.

As evidenced by the transcript, a Richard Landers was called as a witness for the Commonwealth. Mr. Landers was the arresting officer and he testified as follows:

Q. Did you advise . . . (the defendant) . . . of his rights?
A. Yes. He was handcuffed, put in the rear of the cruiser. He was given his Miranda warning and asked if he wished to make any comments in regard to the arrest. He said, "No." (**Buckley** Tr. 199).

Defendant has a constitutional right to remain silent when confronted with accusations. **Miranda v. Arizona,** 384 U.S. 436, 458-461 (1966). Accordingly, it is improper to admit evidence of such silence. In the instant case, Officer Landers' testimony merely established the fact that defendant elected to exercise his Miranda rights. There was no objection from defense counsel and no further testimony on this point.

Defendant has the burden of demonstrating the likelihood that a substantial miscarriage of justice occurred. This court finds that no error occurred in admitting this testimony and, even if error had occurred, there was no prejudice to defendant. Defendant

subsequently took the witness stand and related his version of the incident with the victim. The District Attorney did not recall any of Officer Landers' testimony in her closing argument, nor did defense counsel. The court charged the jury on the elements of the offenses and the burden of proof which the Commonwealth bore. Defense counsel was presented with an opportunity to request an instruction on the significance of a claim of **Miranda** rights but he elected not to do so. In view of these facts, this court finds that the error was harmless beyond a reasonable doubt.

The final contention raised by defendant concerns the testimony of Ruth Walker. Defendant argues that her testimony regarding the dangerous area in which the rape occurred implicated defendant and hence, was prejudicial. The record demonstrates that defense counsel properly objected to her testimony on the grounds of relevance and hearsay. This court sustained the objection and a bench conference was held at which time the District Attorney made an offer of proof on the grounds that the testimony would establish a fresh complaint. The court reversed itself and the testimony was allowed. Mrs. Walker then proceeded to relate how the victim appeared at her door on the date of the rape and the victim told her that she had a fight with her boyfriend. The witness then asked ''do you want me to call the police? Because girls have been raped in this area.'' (**Buckley** Tr. 270). It was only then that the victim stated she had been raped. Mrs. Walker also testified that she kept her door locked during most of the conversation with the victim because she lives in a ''. . . bad area and the police said bad things happened there. And I wasn't opening the door to anyone . . .'' (**Buckley** Tr. 272). This latter testimony, though arguably irrelevant, was not objected to.

It was not error to admit Mrs. Walker's testimony. Defense counsel repeatedly questioned the victim on why she remained outside Mrs. Walker's home after the incident. (**Buckley** Tr. 131). In his closing argument, defense counsel suggested to the jury that Mrs. Walker was the one who first raised the spectre of rape and not the victim. (**Buckley** Tr. 22). The thrust of this portion of the argument permitted the jury to infer that the victim had contrived her story only after Mrs. Walker questioned her specifically about rape. Defense counsel failed to object to her testimony and indeed, was able to use it to defendant's advantage. The fact that a trial tactic is unsuccessful does not later support a legitimate claim of prejudicial error. See **Commonwealth v. Dascalakis**, 246 Mass. 12, 26 (1923) where the Court noted that

> ''(I)t is not infrequent that in the trial of causes . . . that incompetent, immaterial and irrelevant evidence goes without objection. Various motives may induce such conduct by trial counsel. In the main it is done for the supposed advantage of the client to obtain evidence which directly or indirectly may operate in his behalf. Disappointment in the substance of evidence thus elicited, or misapprehension in its expected effect, is . . . (not) . . . error in law . . .

After a full and careful consideration to the evidence and arguments presented by both parties in connection with defendant's motion, I find and rule that justice has been served and that defendant received a fair trial in accord with due process of law.

**Order.**

In light of the foregoing, it is ordered that defendant's motion for a new trial be denied.

**Paul G. Garrity**
**Justice of the Superior Court**