COMMONWEALTH *vs.* FRANCIS P. SALEMME.

Middlesex.    April 16, 1974. — March 3, 1975.

Present: ROSE, GOODMAN, & GRANT, JJ.

*Dynamite Explosion.    Practice, Criminal,* Examination of jurors, Open-
ing statement by prosecutor, Mistrial, Charge to jury, Deliberations
of jury.    *Evidence,* Other offense, Judicial discretion, Credibility of
witness.    *Witness,* Credibility.

In a criminal case, there was no abuse of discretion in the judge's re-
fusal to question each prospective juror individually as to his mem-
ory of the event on which the indictments were based, which had
occurred five years prior to trial, where, after the jury had been
selected, the judge asked the panel whether they had read about
the event and whether that would "affect the judgment of any of
the jurors," and one juror who said it would affect her judgment
was excused. [104-105]
A mistrial of a criminal case was not required by the prosecutor's open-
ing remarks to the jury in which he stated that an F.B.I. agent
would testify that the defendant, in referring to pending indict-
ments, said "I have one beat, but I have a certain problem in another
one," where the jury knew there were two separate indictments
against the defendant before them and would not necessarily have
assumed that the defendant was referring to an unrelated indict-
ment, and where the judge excluded the testimony when offered and
instructed the jury not to consider anything said in the opening
which was not later admitted in evidence. [105-106]
In a trial of indictments charging assault with intent to murder and
assault and battery by means of a dangerous weapon, there was no
error in the admission in evidence of testimony by the victim which
was intended to show that "various persons of notoriety" had rea-
son to kill him where the court ordered the prosecutor not to refer
to such evidence in closing argument and where the defendant did
not move to strike the testimony or request appropriate instructions
after it appeared that the Commonwealth failed to establish any
connection between the defendant and those persons [106]; nor was
a mistrial required by the chief prosecution witness's injection of
inadmissible and prejudicial testimony where the jury were in-
structed, both immediately and in the charge, to disregard the testi-

mony [106-107]; nor was a new trial required by the cumulative effect of such testimony [107].

In a criminal case tried prior to *Commonwealth* v. *Rodriquez,* 364 Mass. 87, a judge's statement to a jury which had deliberated for seven and one-half hours that "this matter must be decided either now or at some future time" did not constitute reversible error. [107-108]

INDICTMENTS found and returned in the Superior Court on October 10, 1969.

The cases were tried before *Donahue, J.*

*F. Lee Bailey* for the defendant.

*Terence M. Troyer,* Assistant District Attorney (*Bonnie H. MacLeod-Griffin,* Assistant District Attorney, with him) for the Commonwealth.

GOODMAN, J.   These are appeals (G. L. c. 278, §§ 33A-33G) from convictions of assault, being armed with a dangerous weapon, with intent to murder and assault and battery by means of a dangerous weapon. The defendant received consecutive sentences of nineteen to twenty years and nine to ten years. The events on which the indictments are based occurred on January 30, 1968. On that day one Mr. John E. Fitzgerald, Jr., was severely injured by an explosion caused by dynamite which had been wired under the hood of an automobile and which detonated as he started the automobile. The indictments were returned October 10, 1969. The defendant was apprehended in New York City on December 14, 1972, and the case was tried to a jury from June 11 through June 15, 1973.

The evidence implicating the defendant came almost entirely from one Daddieco, who testified in summary as follows: In early January of 1968 the defendant asked him if he would help kill Mr. Fitzgerald, "Joe Barboza's lawyer."[1] A few days later Daddieco again met the defendant,

---

[1] Also, Mr. Fitzgerald testified, without objection, that he had represented "Joseph Barboza Baron" (Barboza) in a series of cases in 1967 and that the automobile involved had originally belonged to Barboza who, anticipating that he would remain in Federal custody, gave the automobile to Mr. Fitzgerald. At a bench conference, prior to Mr. Fitzgerald's testimony, defense counsel seemed to accept that Mr. Fitzgerald might testify that Barboza had been "a government witness in

and the defendant said that "they were going to ... blow him [Mr. Fitzgerald] up" by putting dynamite in his automobile. Thereafter, they went to a garage, to which Daddieco had the key, and the defendant rehearsed wiring an automobile of the same model and year as Mr. Fitzgerald's automobile. On January 30, 1968, Daddieco drove with the defendant to the place where Mr. Fitzgerald's automobile was parked, and the defendant, who had three sticks of dynamite with him, then went to the automobile, raised the hood, and (it could be inferred) placed the dynamite under the hood.

We treat the defendant's assignments of error substantially in the order they are argued in his brief.

1. The defendant complains that the trial judge refused to interrogate the prospective jurors individually from a list of questions (not in the record) submitted by defense counsel. He pointed out to the trial judge that the defendant was under indictment for murder in Suffolk County and that the incident from which the indictments in this case arose had received a great deal of notoriety. Thereupon, in addition to the statutory questions (G. L. c. 234, § 28), the court, after the jury had been selected (but before the members were sworn as jurors), asked the panel specifically whether they had read about the placing of an explosive in Mr. Fitzgerald's automobile and whether that struck "a bell with any of the jurors [and would] ... affect the judgment of any of the jurors." One juror said it would affect her judgment, and she was excused. Another indicated he had read about the occurrence in the newspaper at the time, but said it would not affect his judgment. He was not excused. The defendant did not think it necessary to exercise a peremptory challenge of this juror. See *Com-*

some cases" and this was later elicited by defense counsel himself from a defense witness. The defense counsel did, however, object and take exception to Mr. Fitzgerald's naming of specific cases, viz., *United States* v. *Patriarca* (reported as *Patriarca* v. *United States,* 402 F. 2d 314 [1st Cir. 1968], cert. den. 393 U. S. 1022 [1969]), *Commonwealth* v. *French* (reported in 357 Mass. 356 [1970]), and a case involving one Angiulo.

*monwealth* v. *Blackburn,* 354 Mass. 200, 204 (1968); *Commonwealth* v. *Smith,* 357 Mass. 168, 173 (1970). The court was well within its discretion in refusing to probe the memories of the jurors individually about this event which had occurred over five years previously. See *Commonwealth* v. *Scott,* 360 Mass. 695, 696-697 (1971).

2. The defendant urges that his motion for a mistrial should have been granted because the prosecuting attorney, in his opening, stated that an F.B.I. agent who had talked to the defendant would testify to the conversation set out in the margin.[2] In view of the statement in the opening that "[i]n this particular case there are two indictments," it is not clear that the reference was to an unconnected crime. Because of the danger that it would be so understood, it was improperly included in the opening.[3] See *Commonwealth* v. *Nassar,* 351 Mass. 37, 41-42 (1966); *Commonwealth* v. *Bearse,* 358 Mass. 481, 487 (1970).[4] However, the trial judge — as he said he would do in denying the motion for a mistrial after the opening — instructed the jury clearly and forcibly in the charge that they should not consider anything said in the opening that was not later admitted in evidence. Defense counsel did not press for precautionary instructions during or at the conclusion of the opening, and he indicated satisfaction with the charge to the jury after it was made.[5] We believe the trial judge dealt with the situation satisfactorily in the circumstances. See *Commonwealth*

---

[2] The prosecuting attorney stated: "... Mr. Salemme said to him [Mr. Connolly, the agent] when they were leaving the F.B.I. office, 'Would you wish me luck?' and Mr. Connolly will testify that he said, 'I wish you luck, if you are not guilty.' And Mr. Salemme said to him, 'I have one beat, but I have a certain problem in another one.' "

[3] Subsequently, the trial judge excluded this testimony when offered. Cf. *Commonwealth* v. *Nassar,* 351 Mass. 37, 45 (1966).

[4] There is an intimation in the defendant's brief (though little, if any, argument) that the prosecuting attorney violated a commitment to omit any reference in the opening to the statements set out in fn. 2. We have carefully examined the transcript in this connection and do not find bad faith on the part of the prosecuting attorney. See *Commonwealth* v. *Hartford,* 346 Mass. 482, 486 (1963).

[5] He asked for two clarifications on other issues; those were made.

v. *Hartford,* 346 Mass. 482, 485-486 (1963); *Commonwealth* v. *Balakin,* 356 Mass. 547, 552 (1969); *Commonwealth* v. *DeChristoforo,* 360 Mass. 531, 536-538 (1971).

3. The defendant also complains of the admission in evidence of testimony by Mr. Fitzgerald that Barboza had testified in cases involving Patriarca, Angiulo, and French and that Mr. Fitzgerald subsequently referred to those cases in fixing the time of certain conversations. The theory of the prosecution was that the motive for the attempt on Mr. Fitzgerald's life was connected with the fact that he was Barboza's lawyer and that Barboza had testified in various cases. The legitimacy of at least such a showing was not disputed (see fn. 1). The prosecution was thus entitled to show that Mr. Fitzgerald had indeed represented Barboza, and that Barboza had testified in specific cases. These cases involved "various persons of notoriety," as the defendant's brief puts it; but that this might reflect on the defendant does not make the evidence inadmissible, since it had another legitimate purpose. See *Commonwealth* v. *Gardner,* 350 Mass. 664, 668 (1966); *Commonwealth* v. *Redmond,* 357 Mass. 333, 338 (1970); *Commonwealth* v. *Deschamps,* 1 Mass. App. Ct. 1, 2-3 (1972). It was for the trial judge to weigh the various considerations, and we cannot say that it was an abuse of discretion to admit this testimony—particularly since there was nothing to indicate, when this testimony was elicited, that it was not preliminary to the establishment by the prosecution of some link between persons involved in those cases and the defendant. However, no such link was established, and as a result, during the prosecutor's closing argument, the court ordered him not to argue that Barboza had testified against Patriarca and Angiulo. The failure to establish such a link made it subject to a motion to strike with appropriate instructions. No such motion or request for instructions appears to have been made.

The defendant also points to two instances in which Daddieco injected inadmissible and prejudicial matters in his testimony. The court, however, immediately upon the defendant's motions for a mistrial, instructed the jury to

disregard such answers. *Commonwealth* v. *Gibson,* 357 Mass. 45, 48-49 (1970). *Commonwealth* v. *Stone,* 366 Mass. 506, 513 (1974). *Commonwealth* v. *White,* 2 Mass. App. Ct. 258, 264 (1974). And this was reinforced by a strong general instruction in the charge. We cannot say that the court abused its discretion in denying the motions.

The defendant also argues that the totality of these errors requires a new trial, especially since substantially the entire case against the defendant depended on the testimony of Daddieco which, the defendant claims, was unworthy of belief. We do not agree that a new trial is required.

The trial judge kept the trial within strict bounds. To the extent that they were violated, he gave adequate corrective instructions. Such errors as crept into this trial (*Commonwealth* v. *Smith,* 342 Mass. 180, 187-188 [1961]) were peripheral to the ultimate issue on which, in the final analysis, the Commonwealth's case had to stand or fall — the credibility of Daddieco. Daddieco was subject to an intense cross-examination, which portrayed him as completely untrustworthy. However, the jury chose to believe at least the essentials of his story, and we cannot say that their assessment was impermissible. See *Commonwealth* v. *French,* 357 Mass. 356, 398 (1970), judgments vacated as to death penalty sub nom. *Limone* v. *Massachusetts,* 408 U. S. 936 (1972).

4. The *Tuey* charge of which the defendant complains was given at about 10:00 P.M., after the jury had been out about seven and one-half hours.[6] The statement made by the trial judge that "this matter must be decided either now or at some future time," to which the defendant points, was disapproved in *Commonwealth* v. *Rodriquez,* 364 Mass.

---

[6] At about 8:25 P.M. the jury had requested that it be given the entire transcript of the trial. Defense counsel agreed that the request was unreasonable but asked that the trial judge inquire further from the jury to attempt to ascertain its specific concern. The trial judge's refusal to inject himself further in the jury's deliberations was obviously within the scope of his discretion. The defendant's assignment of error in this connection has no merit.

87, 98-99 (1973). But that case was decided after the trial in this case and is not to be applied retroactively. Indeed, the judgments in the *Rodriquez* case were affirmed, though the *Tuey* charge there given contained substantially the language of which the defendant here complains. See also *Commonwealth* v. *Valliere*, 366 Mass. 479, 497 (1974). Nor was the charge otherwise sufficiently different from the classic *Tuey* charge (*Commonwealth* v. *Tuey*, 8 Cush. 1 [1851]) to require reversal. Contrast *Commonwealth* v. *Brown*, 367 Mass. 24, 31-32 (1975).[7]

*Judgments affirmed.*

---

[7] The defendant also states that "it was error to sentence the appellant to prison terms to run from and after rather than concurrently." This contention is made without citation of authority and does not rise to the level of an argument. *Commonwealth* v. *Bernier*, 366 Mass. 717, 719 (1975). We therefore do not feel called upon to discuss this point.