COMMONWEALTH *vs.* TYRONE J. CLARK.

Suffolk. May 12, 1975. — September 16, 1975.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Practice, Criminal,* Access to photographs used in identification, Ex-
culpatory evidence, Discovery, Sequestration of witnesses, Mistrial,
Fair trial. *Evidence,* Other offense, Of state of mind, Leading ques-
tion, Fresh complaint, Evidence at preliminary hearing.

There was no error in the denial of the defendant's motion for the
production of all photographs shown to the victim and to witnesses
in so far as the motion sought production of several hundred photo-
graphs viewed by the victim at police headquarters where the victim
had failed to make an identification from these photographs, where
defense counsel made no attempt to ascertain whether a photograph
of the defendant had been among them, and where the motion was
allowed with respect to a group of eleven photographs from which
the victim, and subsequently five other witnesses, identified a photo-
graph of the defendant. [484-485]

At a criminal trial there was no abuse of discretion in limiting the
discovery of statements made by the defendant to written statements
and oral statements reduced to writing. [485]

At a criminal trial, it was proper to exempt from sequestration of wit-
nesses a prospective prosecution witness, who, as the investigating
officer, was essential to the management of the case. [485-486]

A criminal defendant's motion for a mistrial on the ground that two
prosecution witnesses briefly discussed the case outside the court-
room with other witnesses was properly denied, especially where
neither witness had spoken to any witness who had already testi-
fied. [486]

At the trial of indictments charging robbery, rape, and kidnapping, the
victim's testimony that, after forcing her to leave her apartment
with him, the defendant referred to a radio station that "does dedi-
cations to prisoners" and stated, "I just got out of Concord, you
know," was admissible as relevant to the kidnapping charge, and it
was proper for the prosecutor to refer to the statement in his open-
ing. [486-487]

There was no error in denying the defendant's motion for a mistrial
made on the ground that a detective testified that he arrested the
defendant at a "halfway house," where the judge promptly and
forcefully instructed the jury to disregard the remark and the
defendant himself had in his testimony referred to living in a half-
way house. [487]

At a criminal trial, there was no abuse of discretion in permitting lead-
ing questions to be put to a Spanish-speaking witness for the Com-
monwealth who testified through an interpreter. [487]

At a trial of charges of rape, robbery, and kidnapping, testimony by a
firefighter, to whom the victim ran after escaping from the defend-
ant, concerning her statements about what had happened to her was
admissible as evidence of a fresh complaint. [487]

Where, before a criminal trial, defense counsel was informed by the
prosecutor of the name and address of a certain witness but neither
side was able to locate him, and where defense counsel at trial cre-
ated the impression that the Commonwealth did not produce the
witness because he might contradict the victim's testimony, there
was no error in the judge's ordering both the prosecutor and defense
counsel to make brief statements to the jury as to the information
concerning the witness which was divulged before trial. [487-488]

At a criminal trial, there was no error in allowing the prosecutor to
ask the defendant's mother whether she had testified at the prob-
able cause hearing that the defendant had been in her house at the
time of the crime, where the defendant's mother answered affirma-
tively and no further information was elicited on this point. [488]

At a criminal trial, there was no error in that part of a judge's charge
explaining the nature of a probable cause hearing where there was
nothing in the explanation to imply that the defendant did not offer
a defense at the hearing. [488]


INDICTMENTS found and returned in the Superior Court
on August 10, 1973.

Pre-trial discovery motions were heard by *Dwyer*, J.,
and the cases were tried before *McLaughlin*, C.J.

*Joseph A. Todisco* (*Michael R. Pizziferri* with him) for
the defendant.

*Thomas J. Mundy, Jr.*, Assistant District Attorney, for
the Commonwealth.


GOODMAN, J.   The defendant at a jury trial was con-
victed of rape, unarmed robbery, and kidnapping. He ap-
peals under G. L. c. 278, §§ 33A-33G. We summarize the
events as they appear from the evidence.

On Saturday, June 23, 1973, at about 3:00 P.M., the vic-
tim, a young woman, was returning to her apartment on
Park Drive in Boston from a shopping trip. As she ap-
proached the door to her building, the defendant grabbed
her from behind and went with her into the vestibule of
the building. He struck her and forced her to give him the
money she had — about $30. He then forced her upstairs

to her apartment. Upon entering the apartment the defendant dragged the victim into the kitchen, picked up a kitchen knife, and then dragged her into the bedroom. We omit a description of the brutal details as the defendant terrorized and raped the victim. At one point the victim tried to escape; the defendant caught her as she reached the door, dragged her back to the bed, and struck her repeatedly. Her face was swollen. The defendant then ordered the victim to dress and come with him. He told her, "I've got a gun and if you try to escape I will shoot you or anyone else that tries to help you." They went down by the cellar and out the back door.

The defendant led her down the Fenway and thence to a small Spanish restaurant on Tremont Street in an area unfamiliar to her. They stayed about fifteen minutes while the defendant had something to eat; the victim testified that she did not attempt to ask for help at that time because she believed that none of the restaurant employees understood English.

The defendant and the victim then boarded a bus. The victim whispered to the driver for help, but the driver made no move to come to her aid. The defendant and the victim got off at the next stop. Thereafter the defendant led the victim to a secluded area, demanded that she undress again, and forced her to perform an unnatural act, threatening to kill her.

The defendant and the victim then left the secluded area. As they passed by a fire station (it was now about 9:30 P.M.), the victim broke away from the defendant, ran into the station, and grabbed one of the firefighters, screaming for help. The defendant came into the fire station and said, "I want my woman." When a firefighter suggested that they summon a police officer, the defendant fled.

A medical examination of the victim disclosed the presence of sperm in the vagina, lacerations of the vaginal and hymenal area, and a fracture of the orbital floor beneath the right eye.

At police headquarters the following day the victim looked through a number of boxes containing perhaps sev-

eral hundred photographs kept in the identification section at the headquarters of the Boston Police Department; she made no identification. On Monday, June 25, she was shown a group of eleven photographs, from which she chose the defendant's photograph. The proprietor of the Spanish restaurant and four firefighters subsequently chose the defendant's photograph from the same group. At trial, all six persons identified the defendant.

We treat the assignments of error substantially in the order they are argued in the defendant's brief.

1. Assignments 1, 2, and 3 attack the denial (or partial denial) of various discovery motions.

(a) The defendant's motion to produce all photographs shown "to the victim and/or witnesses" was allowed only as to the group of eleven photographs shown to the victim on Monday, June 25, and later shown to the five other witnesses. The trial judge said: "I don't want him [the prosecuting attorney] to be held to bringing in five hundred photographs shown at headquarters, but I do want the cluster of photographs which were shown to her which ultimately resulted in the alleged identification, shown to defense counsel." The defendant argues, as he did at the hearing on the motion, that he was entitled to know whether the defendant's picture was among those which the victim looked at as she originally went through the files without making an identification. However, that did not require the physical production of all the photographs she had examined. Although the Supreme Judicial Court has held that the police are not required to make a record of the preliminary perusal of identification files by a victim (see *Commonwealth* v. *Gibson*, 357 Mass. 45, 47 [1970], cert. den. 400 U. S. 837 [1970][1]), defense counsel was free to elicit from the police whether the defendant's picture was in the identification files at all and whether, if they knew, it was among those originally in the files examined

---

[1] In that case it was established that the victim had recognized the defendant's picture in the identification files, but the defense asked for all the other pictures viewed by the victim of which a record had not been made.

by the victim. Defense counsel apparently made no attempt to obtain this information before trial; nor did he do so during trial, although he cross-examined both the victim and the police with reference to the victim's perusal of the identification files. In any event, a requirement that the police keep, to the extent practicable, some record of the files of photographs examined by a victim ought not to be imposed by this court in this case in view of *Commonwealth* v. *Gibson, supra.* See the analogous circumstances of *Commonwealth* v. *Salerno,* 356 Mass. 642, 648 (1970), in which the Supreme Judicial Court did not require the recording of grand jury minutes.[2] Further, it seems inconceivable that — whatever the circumstances of the victim's examination of the files — they would have cast any substantial doubt on the identification by the victim, who had been with her assailant for about six hours. Moreover, five others identified the defendant from the eleven photographs shown to them — the same ones shown to the victim. See *Harrington* v. *California,* 395 U. S. 250, 253-254 (1969).

(b) The motion requesting generally all statements, written or oral, made by the defendant[3] was allowed only as to written statements and oral statements reduced to writing. There was no abuse of discretion. *Commonwealth* v. *Colella,* 2 Mass. App. Ct. 706, 709 (1974), and cases cited.

(c) The general motion for exculpatory evidence was properly denied for the reasons set forth in *Commonwealth* v. *Preston,* 359 Mass. 368, 370-371 (1971). *Commonwealth* v. *Colella, supra,* at 708.

2. Assignments 4 and 13 are concerned with the judge's order to sequester witnesses.

(a) It was proper to exempt from the sequestration order Detective Farrell, a prospective Commonwealth witness, the investigating officer in the case, if "the prospective witness, as the judge impliedly found, [wa]s essential to

---

[2] But see Superior Court Rule 101D, adopted April 30, 1971 (now Rule 63 of the Superior Court [1974]), imposing such a requirement.

[3] At the hearing on the motion counsel for the defendant expressly waived the request with respect to statements made to the victim.

the management of the case." *Commonwealth* v. *Therrien,* 359 Mass. 500, 508 (1971).[4]

(b) During the trial two Commonwealth witnesses testified that they had briefly discussed the case outside the courtroom with other witnesses. However, the trial judge determined that neither witness had spoken with any witness who had already testified, and this made pointless the defendant's motion for a mistrial. The trial judge, in any event, has broad discretion in such matters; and this discretion was obviously not abused here. *Commonwealth* v. *Parry,* 1 Mass. App. Ct. 730, 736 (1974).

3. Assignments 6, 10, and 15 concern references by the prosecuting attorney and two witnesses arguably suggesting the defendant's involvement in prior criminal activity.

(a) The victim testified that, as she and the defendant left her apartment, the defendant first referred to a radio station that "does the dedications to the prisoners" and then stated, "I just got out of Concord, you know." The testimony was relevant, particularly to the kidnapping charge. *Commonwealth* v. *Chalifoux,* 362 Mass. 811, 816 (1973), which defense counsel inexplicably fails to mention, is directly applicable. The court there said: "But while evidence of other criminal or wrongful behavior may not be admitted to prove the character or propensity of the accused as enhancing the probability that he committed the offence for which he is standing trial, it is admissible for other relevant probative purposes. . . . Here the statement was admissible to establish fully what occurred during the main episode in suit; it also bore directly on the frame of mind of the victim, her apprehension as to the defendant's intentions, which went to the proof of the crimes of kidnapping . . .. If, indeed, the value of the statement as legitimate proof appeared to be substantially outweighed by the danger of prejudice not correctible by the good sense of the jury, a case could be made for excluding it . . . but the present record does not persuade us to such a conclusion." Since the testimony was admissible, the prosecu-

---

[4] The trial judge offered to grant the defense a similar right.

tor's reference to it in his opening statement was proper. *Commonwealth* v. *Gardner,* 350 Mass. 664, 668 (1966).

(b) The defendant moved for a mistrial after Detective Farrell testified that he had arrested the defendant at what he described as a "halfway house." The judge promptly and forcefully instructed the jury to disregard the reference. There was no error in denying the motion. *Commonwealth* v. *Gibson,* 357 Mass. 45, 48-49 (1970), cert. den. 400 U. S. 837 (1970). Moreover, the defendant himself in his testimony referred to living in a halfway house.

4. Assignment 11. There was no abuse of discretion in permitting leading questions to be put to a Spanish-speaking witness for the Commonwealth who testified through an interpreter. See *Commonwealth* v. *Fiore,* 364 Mass. 819, 825-866 (1974), and cases cited.

5. Assignment 12. Testimony by the firefighter to whom the victim ran concerning the victim's statements about what had happened to her was obviously admissible as evidence of fresh complaint. See *Commonwealth* v. *Hanger,* 357 Mass. 464, 465-466 (1970); *Commonwealth* v. *Izzo,* 359 Mass. 39, 42-43 (1971).

6. Assignment 16. During the cross-examination of Detective Farrell, testimony was elicited concerning the identity and whereabouts of the driver of the bus which the defendant and the victim had boarded.[5] At a bench conference the judge criticized defense counsel for creating the impression that the bus driver, though known to the prosecution, had not been produced by the Commonwealth because he might contradict the victim's story. The judge requested that counsel for the defendant and the prosecuting attorney each make a brief statement to the jury as to the information concerning the bus driver which had been divulged before trial. Counsel for the defendant excepted "to being ordered to make this stipulation." Both attorneys

---

[5] The bus driver did not testify. It is clear from the record that before trial the Commonwealth had provided the defendant with the name of the driver, together with an address at which it was believed he could be located. The efforts of both sides to find the driver were unsuccessful.

then made brief statements. There was no error. While the procedure invoked here may have been uncommon, it cannot be said that it in any way constituted an abuse of the discretionary power of a judge to regulate the course and conduct of a trial. It is the duty of the trial judge to guard against improper conduct and argument of counsel, and he has considerable latitude in his choice of methods to insure that end. See *Commonwealth* v. *O'Connell*, 274 Mass. 315, 323 (1931); *Commonwealth* v. *Witschi*, 301 Mass. 459, 462-463 (1938); *Commonwealth* v. *Lewis*, 346 Mass. 373, 379 (1963), cert. den. 376 U. S. 933 (1964); *Commonwealth* v. *Jasilewicz*, 361 Mass. 877, 878 (1972); *Commonwealth* v. *Pettie*, 363 Mass. 836, 841 (1973).

7. Assignments 17, 18, and 23 concern references by the prosecuting attorney in his cross-examination and by the trial judge in his charge to a probable cause hearing held in a Municipal Court.

(a) During cross-examination of the defendant's mother, the prosecuting attorney asked the witness if she had testified at the probable cause hearing that the defendant had been in her house during the afternoon of June 23. The defendant objected and excepted. The witness responded, "I think I did." Nothing further was elicited on this point. The defendant's subsequent motion for a mistrial was denied, and the defendant excepted. The defendant relies on *Commonwealth* v. *Morrison*, 1 Mass. App. Ct. 632, 635-637 (1973), in which we expressed our disapproval of a line of questioning by a prosecuting attorney intended to elicit the fact that the defendant had failed to testify or present witnesses in the District Court. See G. L. c. 278, § 23. In this case the affirmative answer of the witness clearly makes the *Morrison* case inapplicable.

(b) The defendant excepted to the judge's charge explaining the nature of a probable cause hearing. There is nothing in the explanation (which was entirely relevant) from which the jury could have inferred that the defendant did not offer a defense in the Municipal Court. There was no error.

9. We do not consider the remaining assignments of error. Some of them concern matters as to which there was no exception or other indication of dissatisfaction by trial counsel. See *Commonwealth* v. *Stone*, 366 Mass. 506, 511-512 (1974); *Commonwealth* v. *Lombardo*, 2 Mass. App. Ct. 387, 391-392 (1974). Others have not been argued within the meaning of Rule 1:13 of the Appeals Court, as amended (effective February 27, 1975). *Commonwealth* v. *Lacasse*, 1 Mass. App. Ct. 590, 594-595 (1973), and cases cited, S. C. 365 Mass. 837 (1974). *Commonwealth* v. *Salemme, ante*, 102, 108, fn. 7 (1975). In any event (and without in any way intimating that the assignments have any merit), we are satisfied that no substantial risk of a miscarriage of justice was created. See *Commonwealth* v. *Lombardo, supra*.

*Judgments affirmed.*