COMMONWEALTH *vs.* EUGENE JONES.

Suffolk.    April 7, 1977. — September 22, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & ABRAMS, JJ.

*Practice, Criminal,* Mistrial, Deliberation of jury, Verdict.  *Evidence,*
Photograph.

At the trial of indictments for armed robbery and murder, although
there was evidence that prior to trial two eyewitnesses had identified
the defendant's brother as the perpetrator before independently se-
lecting the defendant, there was no error in the denial of a motion
for a mistrial by reason of the prosecutor's asking a police investiga-
tor during redirect examination as to whether a warrant had been
sought for the arrest of the brother where, before a reply was re-
ceived, objection was made and the question was struck and the jury
were immediately instructed to disregard the question and to draw
no inferences from it. [425-426]
In a capital case, where three eyewitnesses on cross-examination had
testified that the perpetrator was approximately the height of the
brother of the defendant, who was several inches shorter and owned
a pair of platform shoes, there was no error in excluding a photo-
graph of the defendant's brother in stocking feet, sitting near a pair
of platform shoes. [426-427]
At a trial for armed robbery and murder, where the jury returned to
the court room and asked the judge a question calling for further in-
structions, there was no reversible error in the judge's declining to
answer the question, where he had already correctly explained the
elements of the various crimes and stated that his instructions and
supplementary instructions were sufficient for the jury to arrive at
verdicts. [427-428]
In criminal cases tried together, where the jury returned their verdicts
five minutes after the trial judge declined to give a supplementary
instruction which they had requested, there was no abuse of discre-
tion in his then denying the defendant's motion to poll the jury.
[428]

INDICTMENTS found and returned in the Superior Court
on June 13, 1975.

The cases were tried before *Mason,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Richard H. Gens* for the defendant.

*James E. Caffrey,* Special Assistant District Attorney, for the Commonwealth.

ABRAMS, J.   Eugene Jones (defendant) was tried in the Superior Court in April, 1976, pursuant to indictments charging him with armed robbery and murder.[1] The jury found the defendant guilty of armed robbery and murder in the second degree. Accordingly, the judge imposed a mandatory life sentence on the murder conviction and a concurrent eighteen to twenty year sentence on the armed robbery conviction. The defendant's motion for a new trial was denied. Thereafter he duly noted his appeal. On February 17, 1977, we ordered that the matter be transferred to this court. We affirm the judgments of the Superior Court.

From the evidence adduced at trial, the jury could have found that on August 3, 1974, at approximately 4:30 P.M., the defendant entered the J & D Liquor store on Blue Hill Avenue, Roxbury, in the company of another man. The accomplice selected a can of beer from the shelf and paid for it. When the clerk, one Carl Cash, returned with the customer's change, the accomplice produced a pistol and took twenty or thirty dollars from the register as well as the clerk's wallet. While this was happening, the defendant, who was also brandishing a gun, stood inside the front door, acting as lookout. As a customer entered the store during the course of the robbery, the defendant shot him in the chest, mortally wounding him. Two other employees, Robert Gelzer and Sherman Baker, were present in the store and witnessed the crimes.

Several hours later, the three employees proceeded to police headquarters. Cash was shown a photographic array, from which he selected, as his alleged assailant, a picture of the defendant's brother. Gelzer similarly selected a photograph of the defendant's brother, and he chose the same

---

[1] The defendant was originally brought to trial on the same two charges on October 23, 1975, but a mistrial was declared on November 1, 1975.

person when he viewed another array on the next day. When Cash and Gelzer were asked on August 14, 1974, to attempt another photographic identification from a spread which included the defendant's brother and for the first time the defendant himself, both witnesses independently selected the defendant as the perpetrator. The issue of identification was fully explored at trial.

1. *Motion for mistrial* — During redirect examination of the police investigator, the prosecutor inquired whether a warrant was sought for the arrest of the defendant's brother in connection with the armed robbery and homicide. Before the witness had an opportunity to answer, defense counsel objected to the question and moved for a mistrial. Though the objection was sustained and the question struck, the judge declined to order a mistrial. He did, however, instruct the jury to disregard the question and to draw no inferences from it.

The defendant contends that where the police seek to arrest one person rather than another, a natural inference is created that the other person did not commit the crime. Since his entire defense was erected on a theory of mistaken identity, the defendant argues that the question, which was aimed at showing that the police had dismissed the brother as a suspect, prejudiced his case. He therefore argues that the judge erred in his disposition of the motion for mistrial.

Ordinarily the declaring of a mistrial is within the sound discretion of the judge. *Commonwealth* v. *Flynn,* 362 Mass. 455, 471 (1972). *Commonwealth* v. *Jasilewicz,* 361 Mass. 877 (1972). *Commonwealth* v. *Bellino,* 320 Mass. 635, 644 (1947), cert. denied, 330 U.S. 832 (1948). In the instant case, the witness was not permitted to respond to the question, and thus no arguably incompetent testimony was heard by the jury. Cf. *Commonwealth* v. *Barnett,* 371 Mass. 87, 96 (1976), cert. denied, 429 U.S. 1049 (1977); *Commonwealth* v. *Tatro,* 4 Mass. App. Ct. 295, 298 (1976); *Commonwealth* v. *Early,* 349 Mass. 636, 637 (1965). Moreover, the judge ordered the question struck and immediately instructed the jury that they were to

draw no inferences from the question.[2] See *Commonwealth v. Barnett, supra* at 96; *Commonwealth* v. *Flynn, supra* at 470; *Commonwealth* v. *Sousa,* 350 Mass. 591, 595 (1966). It is normally assumed that the jury followed the judge's instruction, *Commonwealth* v. *Gordon,* 356 Mass. 598 (1970), and there is nothing in the record to suggest otherwise. See *Commonwealth* v. *Bellino, supra* at 645. In these circumstances, there was no error in the denial of the motion for mistrial.

2. *Exclusion of evidence* — On cross-examination, each of the three witnesses testified that the perpetrator was approximately five feet, eight inches tall, the height of the defendant's brother. The defendant himself was several inches shorter. The prosecution sought to counteract this emerging spectre of mistaken identity by introducing testimony to the effect that the defendant owned a pair of platform shoes which he could have worn during the commission of the crime. The defense later attempted to introduce a photograph of the defendant's brother in stocking feet, sitting near a pair of platform shoes. The defendant contends that the judge erred when he excluded that photograph.

A properly authenticated photograph is admissible when it possesses "evidential value upon a material matter." *Commonwealth* v. *Richmond,* 371 Mass. 563, 584 (1976), quoting from *Commonwealth* v. *McGarty,* 323 Mass. 435, 438 (1948). See *Commonwealth* v. *Turner,* 371 Mass. 803, 813 (1977); *Commonwealth* v. *Bys,* 370 Mass. 350, 357 (1976); 3 J. Wigmore, Evidence § 792 (Chadbourn rev. 1970). Whether a photograph has such value is a determination which rests within the sound discretion of the trial judge. *Commonwealth* v. *Simpson,* 370 Mass. 119, 126 (1976). "[A] defendant who claims an abuse of that dis-

---

[2] In his charge, the judge told the jury to disregard totally all matters struck and to "draw no inferences from them." The defendant took no exception to this portion of the charge. Nor did he request any further instruction on this point.

cretion assumes ... [the] heavy burden" of demonstrating "that no conscientious judge, acting intelligently, could honestly have taken the view expressed by ... [the trial judge]." *Commonwealth* v. *Bys, supra* at 361, quoting from *Davis* v. *Boston Elevated Ry.*, 235 Mass. 482, 502 (1920). The defendant has fallen far short in his effort to meet this burden. Cf. *Commonwealth* v. *Richmond, supra.* The excluded photograph was of dubious relevancy on the question whether the defendant's brother could have perpetrated the crimes while wearing platform shoes. There was no error.

3. *Compulsion to reach verdict* — During the course of their deliberations, the jury returned to the court room and asked the judge, in effect, whether it was permissible for them to find the defendant guilty of armed robbery (which is punishable by life imprisonment, G. L. c. 265, § 17) and yet convict him of murder in the second degree (see G. L. c. 265, § 1). The judge declined to answer, and instead he stated: "The instructions that I have given are sufficiently adequate to enable you to arrive at a verdict. These were the instructions that I gave you yesterday morning and the supplemental instructions given to you late yesterday afternoon, and they are adequate to enable you to arrive at a verdict." Defense counsel immediately requested that this answer be struck. Further, he requested the judge to tell the jury that the prior instructions were "sufficiently adequate to allow you [the jury] to deliberate and to apply the law to the facts that you have heard." This request was denied. The defendant contends that the denial of his request constituted reversible error because, he says, the judge's answer as given had the effect of compelling the jury to reach a verdict. We disagree.

In *Commonwealth* v. *Rodriquez*, 364 Mass. 87, 97-101 (1973), we expressed our disapproval of the *Tuey* charge, see *Commonwealth* v. *Tuey*, 8 Cush. 1, 2-3 (1851), reprinted in 364 Mass. at 101, app. A, in so far as it (1) informs the jury that the case must at some time be de-

cided and (2) tends to induce those jurors tentatively in the minority to be persuaded by those in the majority. See also *Commonwealth* v. *Salemme,* 3 Mass. App. Ct. 102, 107-108 (1975). We concur in the defendant's assertion that it would have been inappropriate for the judge to have given a *Tuey-Rodriquez* charge without specifically answering the jury's question. However, it is readily apparent that the judge's response neither created the impression that the case had to be decided nor did it in any way compel any juror to put aside his own views on the question of the defendant's guilt or innocence. The remarks did not compel a juror to choose between murder in the first or second degree while foreclosing the possibility of acquittal. Cf. *Commonwealth* v. *Brown,* 367 Mass. 24, 29-32 (1975). Instead, the judge merely informed the jury of his belief that they had been adequately instructed, and that he could not offer them any further guidance. In the circumstances, the judge, having already correctly explained to the jury the elements of the various crimes which they could have found that the defendant committed, did not err in declining to say anything more. Cf. *Commonwealth* v. *Dickerson,* 372 Mass. 783, 795-798 (1977).

4. *Refusal to poll jury* — It is urged that the judge erred when he refused to poll the jury as requested by the defendant after their verdicts were announced. The decision to poll the jury rests within the discretion of the judge. *Commonwealth* v. *Caine,* 366 Mass. 366, 372 (1974). *Commonwealth* v. *Beneficial Fin. Co.,* 360 Mass. 188 (1971), cert. denied sub nom. *Farrell* v. *Massachusetts,* 407 U.S. 910, and sub nom. *Beneficial Fin. Co.* v. *Massachusetts,* 407 U.S. 914 (1972). Compare Proposed R. Crim. P. for Dist. & Super. Cts. 27 (d) (1976), with ABA Standards Relating to Trial by Jury § 5.5 (Approved Draft 1968). The defendant contends that the judge abused his discretion because the jury returned with their verdicts five minutes after he declined to give a supplementary instruction. See part 3, *supra.* We perceive no abuse of discretion.

Consonant with our duty under G. L. c. 278, § 33E, we have considered the entire record and find no reason to reduce the verdict or to grant a new trial.

*Judgments affirmed.*