COMMONWEALTH vs. CHARLES BROWN.

Suffolk. February 6, 1978. — August 15, 1978.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, WILKINS, & ABRAMS, JJ.

Practice, Criminal, Access to photographs used in identification, Mis-
trial, Conduct by prosecutor, Capital case. Evidence, Photograph,
Other offense.

At a criminal trial, the inability of the Commonwealth to produce the
entire group of photographs from which a pretrial identification of
the defendant was made did not render the photographic identifica-
tion inadmissible where there was no indication that the proce-
dures with regard to the photographic identification were imper-
missibly suggestive. [161–164]
At the trial of a defendant charged with murder in the first degree and
armed robbery, a mistrial was not required by the fact that the
prosecutor asked the defendant's mother about her knowledge of
her son's heroin habit where the judge excluded the question and
instructed the jury to disregard it. [164–166]
At the trial of a defendant charged with murder in the first degree and
armed robbery, a mistrial was not required by the prosecutor's
persistence in alluding to the question of the defendant's possible
heroin habit, in spite of the judge's instructions, where the judge's
immediate exclusion of the question combined with his previous
instructions to the jury cautioning them to disregard such testimo-
ny eliminated any possible prejudicial effect. [166]
This court expressed its expectation that in all capital cases hereafter
brought before it on appeal the briefs will contain appropriate argu-
ments addressed to the court's review under the provision of G. L.
c. 278, § 33E. [167–169]

INDICTMENTS found and returned in the Superior Court
on March 11, 1975.

The cases were tried before McGuire, J.

Albert L. Hutton, Jr., for the defendant.

Timothy P. O'Neill, Assistant District Attorney, for the
Commonwealth.

QUIRICO, J. The defendant was indicted for murder in the first degree and armed robbery. After a jury trial, he was convicted on both indictments. The defendant appeals pursuant to G. L. c. 278, §§ 33A-33G, and argues the following assignments of error.[1] The trial judge erred in (1) admitting evidence of a photographic identification of the defendant as the assailant of the victim notwithstanding the Commonwealth's inability to produce the group of photographs from which his picture was selected, and (2) denying the defendant's motions for mistrial based on (a) a question asked by the prosecutor of the defendant's mother as to her knowledge of her son's heroin habit, and (b) the persistence of the prosecutor in alluding to that question, in spite of the judge's instructions to the contrary, by asking the defendant's mother if, during a particular time period relative to the date of the crimes charged, she had observed the defendant's arms.

We conclude that there was no error, and that there is no basis to modify the jury verdict or to grant the defendant any other relief under G. L. c. 278, § 33E.

We summarize the evidence presented by the prosecution. About 10:15 P.M. on October 14, 1974, Diane Kenney and the victim, Michael Richardson (Richardson), arrived by taxicab at the Kenney home at 23 Sunnyside Street in Jamaica Plain. When the taxicab stopped near the driveway of the house, Richardson got out while Mrs. Kenney gave the driver four one dollar bills for the fare. As Mrs. Kenney stepped out of the taxicab, a black male opened the door on the driver's side, grabbed the one dollar bills, leaving part of one of the bills in the driver's hand, and shoved an object into the side of the driver's body. The driver testified that the object felt like a knife.[2]

---

[1] The defendant specifically waives all other alleged errors claimed in his "Assignments of Error."

[2] It was stipulated by the parties that a knife sheath was found by another driver on the front floor of the taxicab the following morning. The knife sheath was admitted in evidence as an exhibit.

On seeing the struggle between the man and the driver who attempted to get out on the other side of the vehicle, Mrs. Kenney screamed. This apparently caused the man to abandon his struggle with the driver. Mrs. Kenney ran to the porch of her neighbor's home and from there she observed two men outside the taxicab, one holding Richardson from behind, and the other standing to Richardson's side. Mrs. Kenney's husband, John Kenney (Kenney), and their fifteen-year old daughter, Paula, who were in their second floor apartment, heard Mrs. Kenney's screams and they ran down the stairs and outside onto the porch. From there, they both observed a black male strike Richardson in the neck.[3] As a result of this blow, Richardson began to bleed profusely and he died at the scene shortly thereafter.

After observing the man strike Richardson, Kenney took off his belt, began to swing it and chased the man down Sunnyside Street, followed closely by Paula. Although they did not catch him, they came quite close to him and had an opportunity to observe his features. The chase ended when the man entered a late model blue automobile, occupied by another person, and drove away. Both Kenney and Paula observed him again at close range through a window of the automobile as he turned to face them.[4] Kenney swung his belt in an effort to hit the window, but instead struck the top portion of the window on the driver's side of the car. The car then sped down Sunnyside Street. Paula was able to see a portion

---

[3] Kenney testified that the man struck Richardson with his left hand. Although Paula was unable to remember which hand the man used, she used her left hand to demonstrate to the jury how the blow was struck.

[4] Kenney testified on direct examination that the man grinned when he turned to face them. During cross-examination, counsel for the defendant directed the defendant to stand, open his mouth and display to the witness that his upper front teeth were missing. Although Kenney testified that he had seen the defendant smile at him on October 14, he admitted that he had not noticed the defendant's teeth.

of the license plate number, and it was either 874 or 784, with two "1's" at the end. After the car drove off Kenney noticed another black male running into a court yard away from Sunnyside Street.

Approximately a week later, Boston police officers showed Kenney two thick books of photographs of black males from which he selected a picture of the defendant as the man he had observed strike Richardson. On the same date, Paula was shown fifteen photographs of black males from which she chose a picture of the defendant as the person she had seen strike Richardson. Mrs. Kenney was also shown certain photographs, but she could not make an identification.

On November 9, 1974, two police officers took Kenney and Paula separately through two wards of the Peter Bent Brigham hospital in Boston and asked them whether they could identify anyone. After looking at the individuals in the two wards, where there were at least fifteen black males, Kenney saw the defendant and identified him as the man he saw strike Richardson on October 14. When Paula walked through the wards, she stopped at the defendant's bed and looked at him. She then talked to one of the police officers but that conversation was not admitted in evidence. In addition to the photographic and hospital identifications, Kenney and Paula each identified the defendant at the trial as the man who struck Richardson and they testified that their in-court identifications were based on their memory of seeing the defendant on October 14, 1974.

Dr. George W. Curtis, a pathologist and medical examiner for Suffolk County, testified that an autopsy which he performed on October 15, 1974, revealed that Richardson had died as a result of a stab wound which entered the right side of the neck, severed the left main artery and jugular vein, and ended in the left shoulder. The wound was six to eight inches deep and was caused by a very powerful, hard blow. He testified that such a blow could have been delivered by either a right-handed or left-handed person.

Officer Eugene Simpson of the Boston police department, testified that during his investigation at the scene of the crime on October 14, 1974, he found a piece of vinyl covering on the sidewalk in front of 19 Sunnyside Street.

John Chu testified that between 9:30 and 10:30 P.M., on October 14, 1974, he discovered that his 1971 blue Cougar automobile, license plate number 82471L, was missing from a parking space on Harrison Avenue in the Chinese section of Boston. He reported this to the police at approximately 11 P.M., and the automobile was found in Jamaica Plain a few days later. He identified the piece of vinyl covering found by Officer Simpson as one which had been attached to the kick plate on the passenger side of his car. He also testified that some dents in the chrome area above the driver's window of the automobile were not present when he had last seen his car on October 14, 1974.

The sole defense witness, the defendant's mother, Mrs. Anna Brown, testified on direct examination that on October 14, 1974, she and the defendant left their Dorchester home at 4:30 P.M., to tend her garden in the Fenway area of Boston and returned home again at 6:30 P.M. They ate supper together and then watched television until 11:30 P.M., when Mrs. Brown, the defendant, and two of Mrs. Brown's other children went to bed. Mrs. Brown testified further that the defendant was right handed, that his front teeth were broken in an accident in 1969, and they were extracted in 1972.

On cross-examination, Mrs. Brown testified that the defendant worked at a factory until the third week in October when he was laid off, that he was a quiet person, that he had no friends, and that he had never brought company to the house. The prosecutor then asked Mrs. Brown whether on October 14, 1974, the defendant had a heroin habit. She responded in the negative. Counsel for the defendant objected to the question and moved for a mistrial. After an extensive bench conference at which the judge indicated to the prosecutor that this line of inquiry was inadmissible, the question was excluded and

the judge instructed the jury to disregard it. However, he denied the defendant's motion for a mistrial.

A short time later, the prosecutor asked Mrs. Brown some general questions concerning where the defendant had lived during the months of September and October, 1974, what the state of his health had been during that period, and whether Mrs. Brown had observed his appearance. Mrs. Brown responded that the defendant had lived with her during that time, that his health had been good and that she had observed his appearance. The prosecutor then asked her if she had observed the defendant's arms. She answered affirmatively, counsel for the defendant objected, and the question and answer were struck. At a bench conference, the judge admonished the prosecutor that he had given him strict instructions not to inquire about the subject of heroin and that he would not allow any evidence to be introduced on the matter. The defendant again moved for a mistrial and the judge denied it.

Finally, the Commonwealth called as a rebuttal witness the personnel manager from the factory where Mrs. Brown had stated the defendant worked through the third week in October. The witness testified from an employment record, which was admitted as an exhibit, that the defendant had commenced work on September 9, 1974, and was terminated on October 2, 1974. The witness further testified to the address given by the defendant on the employment record which was different from the one given by Mrs. Brown.

1. *Photographic Identification.*

The defendant contends that it was error to permit the Commonwealth to introduce in evidence the photographic identification made by Kenney because the Commonwealth was unable to produce the entire group of photographs from which the defendant's picture was selected. The defendant argues in effect that the failure to preserve and produce the photographs prevented the jury from assessing whether the identification procedure had

been so suggestive as to affect its evidentiary weight. We disagree with this contention.

In *Commonwealth* v. *Gibson*, 357 Mass. 45, 47, cert. denied, 400 U.S. 837 (1970), we held it was not error to refuse a defendant permission in pretrial discovery to view all the photographs which the police had shown to identifying witnesses. In that case, although the defendant argued that the inability to examine the photographs prevented his counsel from effectively testing the "critical identifications" made by the witnesses, we held that "to require segregation of all photographs shown to witnesses in the investigatory stage of all crimes would be to place a heavy if not intolerable burden upon investigatory processes at a time when these processes are already overtaxed, and we are not disposed to do it." We also noted in that case that there was no indication of any improper suggestion made to the witnesses by police during the identification process. The witnesses had had a chance to observe the defendant at the time the crime was committed, they identified him positively at trial, and they appeared reliable and intelligent. In addition, "the jury had before them the complete story of the photographic identifications for such weight as they chose to give it."

Our decision in the *Gibson* case has been followed by the Appeals Court in two separate opinions involving this same issue. In *Commonwealth* v. *Meggs*, 4 Mass. App. Ct. 773, further appellate review denied, 370 Mass. 867 (1976), the police and the prosecutor represented to the trial judge that the photographs shown to various witnesses before trial had not been segregated and were not available, and the Appeals Court held that there was no error in the judge's refusal to order the production of the photographs. In *Commonwealth* v. *Clark*, 3 Mass. App. Ct. 481, 484-485 (1975), the defendant appealed from the trial judge's partial denial of a motion to produce "all photographs shown 'to the victim and/or witnesses,' " and the Appeals Court held that, although the defendant was en-

titled to know whether his picture was among the original group shown to the victim, the physical production of *all* the photographs examined was not required.

Based on our holding in the *Gibson* case, and the decisions of the Appeals Court, we hold that the judge was correct in allowing in evidence the photographic identification without requiring the accompanying introduction of the "two thick books" of photographs Kenney had examined. The impracticability of requiring the segregation and production at trial of volumes of photographs shown to witnesses in the course of police investigation greatly outweighs any possible evidentiary value which an examination of such photographs might afford. In the instant case, there was no indication that the procedures employed by the police with regard to the photographic identification made by Kenney were impermissibly suggestive. Kenney had had an opportunity to view Richardson's assailant several times on the evening of the crimes. After the passage of only a few days the police showed him two books containing photographs of black males from which he selected the defendant's picture as the man who struck Richardson. There was no evidence that the police attempted to highlight the defendant's photograph in any manner. Later, Kenney identified the defendant in the hospital ward and again at trial.[5] Paula Kenney also identified the defendant from a group of fifteen photographs she was shown by the police, and in addition she identified the defendant in court.[6] Based on this evidence, it is difficult to conceive that the failure to require the introduction of the two books of photographs prevented the jury from properly assessing the weight to

---

[5] There was testimony at trial that Kenney also identified the defendant in the Municipal Court of the Roxbury District on February 14, 1975.

[6] The fifteen photographs from which Paula picked the defendant's photograph were available in court. The defendant's photograph was admitted in evidence but neither side attempted to introduce the other fourteen photographs in the group.

be accorded Kenney's identification, or that the photographs, if introduced, would have cast any significant doubt on the identification. See *Commonwealth* v. *Clark,* *supra* at 485.

2. *Motions for Mistrial.*

(a) The defendant contends that it was error to deny his initial motion for mistrial based on the question put by the prosecutor to the defendant's mother about her knowledge of her son's heroin habit. Although on objection by the defendant the judge excluded the question and instructed the jury to disregard it, the defendant seems to argue that the question itself was so prejudicial as to be beyond curability by the judge's instructions. The Commonwealth contends, however, that (1) the question as to the defendant's heroin habit was proper because it was designed in part to show that the defendant had a motive to commit the crimes charged and, that (2) although the question was proper, it was excluded by the judge who instructed the jury clearly and immediately to disregard it, and there is no indication that the jury ignored the judge's instructions.

We note that ordinarily evidence which tends to establish motive for a crime is admissible. "Although motive is not an essential element of a crime, and proof of it is not required, evidence tending to show motive is always competent because, if clearly shown, it may help to confirm the conclusion reached from all the other evidence that the defendant is guilty of the crime charged." *Commonwealth* v. *Johnson,* 352 Mass. 311, 320-321, cert. granted, 389 U.S. 816 (1967), cert. dismissed, 390 U.S. 511 (1968). *Commonwealth* v. *Locke,* 338 Mass. 682, 691 (1959). *Commonwealth* v. *Simpson,* 300 Mass. 45, 56, cert. denied, 304 U.S. 565 (1938). *Commonwealth* v. *Feci,* 235 Mass. 562, 566-567 (1920). In the instant case, evidence that the defendant was a regular user of heroin, and thus in need of a continuous source of money to supply his habit, coupled with the rebuttal evidence introduced by the Commonwealth that the defendant's employment

had been terminated several days prior to the robbery and murder, could have established a strong motive for the defendant's involvement in the crimes charged. There was no indication that the prosecutor's questioning of the defendant's mother about her son's heroin habit was done in bad faith or in an effort to implant an unwarranted suggestion in the minds of the jury.[7]

However, in this case, the judge concluded that the prejudicial effect of such evidence would greatly outweigh any probative value it might have. He excluded the question and instructed the jury in very clear language that they were to draw no inferences from it. Although the defendant contends that the mere asking of the question as to his heroin habit was so prejudicial as to warrant the declaration of a mistrial because it improperly "informed the jury that the defendant very probably had a criminal record," we think such argument is mere speculation. Rather, "[i]t is normally assumed that the jury followed the judge's instruction [to disregard the question], *Commonwealth* v. *Gordon*, 356 Mass. 598 (1970), and there is nothing in the record to suggest otherwise." *Commonwealth* v. *Jones*, 373 Mass. 423, 426 (1977). See *Commonwealth* v. *Bellino*, 320 Mass. 635, 645 (1947), cert. denied, 330 U.S. 832 (1948).

The decision whether to grant a mistrial is ordinarily within the sound discretion of the judge. *Commonwealth* v. *Jones, supra* at 425. *Commonwealth* v. *Barnett*, 371 Mass. 87, 96 (1976), cert. denied, 429 U.S. 1049 (1977). *Commonwealth* v. *Flynn*, 362 Mass. 455, 471 (1972). *Commonwealth* v. *Jasilewicz*, 361 Mass. 877 (1972). *Commonwealth* v. *Bellino, supra* at 644. In the circumstances of the present case, we think the judge acted within the

---

[7] At the bench conference concerning the admissibility of the evidence, the assistant district attorney disclosed to the judge that the defendant had several prior convictions for possession of heroin and that the Commonwealth was prepared to offer witnesses who would testify that the defendant's mother was in court when the defendant had pleaded guilty to those charges.

bounds of his discretion in denying the defendant's initial motion for a mistrial.

(b) The defendant contends that it was error to deny his second motion for a mistrial based on the persistence of the prosecutor in alluding to the question of the defendant's possible heroin habit, in spite of the judge's instructions to the contrary, by asking the defendant's mother if, during a particular time period relative to the date of the crimes charged, she had observed the defendant's arms. Clearly it was improper for the prosecutor to persist in asking a question regarding a subject matter which the judge had previously excluded. See *Commonwealth* v. *Cepulonis*, 374 Mass. 487, 499-500 (1978). Cf. *Sussman* v. *Commonwealth*, 374 Mass. 692, 697 (1978). However, we think the judge's immediate exclusion of the question as well as the witness's response, combined with his previous instructions to the jury cautioning them to disregard such testimony, eliminated any possible prejudicial effect. *Commonwealth* v. *Cepulonis*, *supra* at 498, 499-500.

There was no error in the denial of the second motion for mistrial.

3. *Review under G. L. c. 278, § 33E.*

General Laws c. 278, § 33E, as amended through St. 1974, c. 457, provides in part: "In a capital case as hereinafter defined the entry in the supreme judicial court shall transfer to that court the whole case for its consideration of the law and the evidence. Upon such consideration the court may if satisfied that the verdict was against the law or the weight of the evidence, or because of newly discovered evidence, or for any other reasons that justice may require (a) order a new trial or (b) direct the entry of a verdict of a lesser degree of guilt, and remand the case to the superior court for the imposition of sentence. For the purpose of such review a capital case shall mean a case in which the defendant was tried on an indictment for murder in the first degree and was convicted of murder either in the first or second degree." In the present case neither the defendant nor the Com-

monwealth has briefed any argument under § 33E. However, as required by the statute, we have examined "the whole case" and have considered "the law and the evidence," and conclude that the defendant is not entitled to any relief from the judgments against him. The trial was conducted in an appropriate manner, the judge properly instructed the jury on the law, and the evidence was sufficient to support the verdicts of the jury that the defendant was a participant in the armed robbery of the taxicab driver, and that he murdered Richardson in the course of the robbery. Nothing in the record entitles the defendant to a new trial or indicates that the verdict, if allowed to stand, would constitute a miscarriage of justice.

The failure of both parties to make any argument to aid in our consideration of the case under G. L. c. 278, § 33E, represents an all too frequent occurrence in capital cases coming before us. Although such cases are briefed and argued on claimed assignments of error, there is often no argument, on the defendant's side, as to possible reasons for our granting relief under § 33E, or, on the side of the Commonwealth, as to reasons for our refraining from the exercise of § 33E powers.

Prior to the enactment of St. 1939, c. 341, which amended G. L. c. 278, § 33E, this court was empowered to pass only on issues of law, and the power to order a new trial in a capital case was vested solely in the trial judge. The amendment was enacted in part to remedy the defects in such procedures which had been especially evident in the celebrated cases of *Commonwealth* v. *Sacco*, 259 Mass. 128 (1927), and *Commonwealth* v. *Sacco*, 255 Mass. 369 (1926). Third Report of the Judicial Council, Pub. Doc. No. 144, at 37-43 (Dec. 1927), reprinted in 13 Mass. L.Q. (No. 1, 1927). The appeal process in those cases took many years, and involved multiple defense motions for new trials, as to which our review was strictly confined to questions of law and to whether there had been an abuse of discretion by the trial judge in his denials of the mo-

tions. *Commonwealth* v. *Sacco*, 259 Mass. at 134-142. *Commonwealth* v. *Sacco*, 255 Mass. at 411-458. The 1939 amendment changed the law by providing that the entry in this court of an appeal of a capital case transfers the whole case for our consideration on the facts as well as the law and gives this court the power to order a new trial if justice so requires. See Thirteenth Report of the Judicial Council, Pub. Doc. No. 144, at 28-30 (Dec. 1937), reprinted in 23 Mass. L.Q. (preliminary supp. to No. 1, 1938); Fourteenth Report of the Judicial Council, Pub. Doc. No. 144, at 14-16 (Dec. 1938), reprinted in 24 Mass. L.Q. (preliminary supp. to No. 1, 1939); Fifteenth Report of the Judicial Council, Pub. Doc. No. 144, at 8-9 (Dec. 1939), reprinted in 25 Mass. L.Q. (preliminary Supp. to No. 1, 1940). See also Rosenthal, Reversible Error in Homicide Cases in Massachusetts 1927-1949, 34 Mass. L.Q. 49-53 (No. 4, 1949). Statute 1962, c. 453, further amended G. L. c. 278, § 33E, by empowering this court to direct the entry of a verdict of a lesser degree of guilt should our examination of the record indicate that the needs of justice require such action.

Thus, G. L. c. 278, § 33E, gives this court extraordinary powers in the review of capital cases. The statute operates as a type of "safety valve" by ensuring review as to all aspects of cases regardless of the absence of claim of error. However, while we recognize our great responsibility under the statute, we take this occasion to emphasize that there is a corresponding responsibility on the part of counsel for the defense and the Commonwealth to provide us with some help and some guidance by briefing § 33E issues. The quality of our review can be enhanced by such appellate advocacy and we think that the incidental burden on counsel is slight when viewed in light of the critical importance of our review of capital cases to both the defendants and the Commonwealth. Consequently, we expect that in all capital cases hereafter brought before us on appeal the briefs will contain appropriate arguments addressed to the court's review under § 33E.

4. For all the reasons stated above, the judgments of the Superior Court are affirmed.

*Judgments affirmed.*